NOT DESIGNATED FOR PUBLICATION

No. 123,374

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CHRISTOPHER A. BELONE,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed November 24, 2021. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Emma Halling*, assistant district attorney, *Suzanne Valdez*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.

PER CURIAM: Christopher A. Belone appeals the summary dismissal of his timely pro se K.S.A. 60-1507 motion, which raised claims of ineffective assistance of trial counsel. In the motion, Belone alleged that his trial counsel failed to present expert testimony about an alternative cause of death for the victim of his second-degree murder conviction. The district court found the motion lacked factual support and that trial counsel made a strategic decision not to refute the State's forensic expert by calling an independent forensic expert. Belone now appeals, arguing he was entitled to an evidentiary hearing. Finding no error, we affirm.

1

Linda Begay died in August 2006 after an incident in which Belone, her boyfriend, beat her with a wooden table leg. After a long trial, a jury convicted Belone of second-degree murder, kidnapping, obstructing official duty, and violating a protective order. On appeal, the Kansas Supreme Court reversed those convictions after finding Sixth Amendment Confrontation Clause violations warranted a new trial. See *State v. Belone*, No. 99,176, 2010 WL 173950 (Kan. App. 2010) (unpublished opinion), *rev'd* 295 Kan. 499, 285 P.3d 378 (2012). At the second trial, a jury convicted Belone of unintentional second-degree murder and violating a protective order, and the district court sentenced him to a controlling term of 438 months' imprisonment. Belone then unsuccessfully appealed to this court, which affirmed his convictions and sentence. *State v. Belone*, 51 Kan. App. 2d 179, 343 P.3d 128 (2015).

This court summarized the facts from the second trial as follows:

"On July 29, 2006, City of Lawrence Police Officers Anthony Brixius and Micah Stegall responded to Gaslight Village trailer park following reports of criminal damage to property and a possible domestic dispute. Officer Brixius spoke with Keith Bowers, who said Begay showed up at his trailer covered in blood and told Bowers that she had been at Frank Mallonee's trailer when Belone came inside and began beating her with a two-by-four. Bowers took Begay to the hospital.

"At the hospital, Begay appeared intoxicated and hysterical. She told hospital staff she had been assaulted by her boyfriend. Begay had a large cut on the bridge of her nose, blood on her face, and bruises on her face, arms, legs, chest, stomach, and buttocks. Begay complained of pain all over but emphasized the pain in her abdomen. A CT scan of Begay's abdomen showed bruising to her duodenum. Begay died on August 1, 2006, from peritonitis caused by blunt force trauma to her abdomen." 51 Kan. App. 2d at 181-82.

2

Belone filed a timely pro se K.S.A. 60-1507 motion, raising several claims of ineffective assistance of trial counsel. Belone directed one of his claims at counsel's alleged failure to challenge one of the State's expert witnesses in two ways: (1) by failing to present independent medical testimony about Begay's cause of death; and (2) by failing to lodge a *Daubert* challenge to the State's expert. See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593-594, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) (establishing standards for evaluating reliability of an expert witness). In particular, Belone asserted in the motion that Begay had a prior "Self-inflicted or Accedential [*sic*] Inflicted Impact that 'Could have' caused the injury [resulting in her death]," and that the jury might have ruled differently if his counsel had called an independent expert witness to testify to these facts at trial. In another claim, Belone alleges that the prosecutor and his trial counsel knew Begay had sustained her injuries in a bicycle accident and conspired together to convict him for political reasons.

Belone filed a motion for appointment of counsel and included several attachments to his motion that he titled "Amendments." The documents relevant to this appeal included:

- A copy of a forensics report from Dr. Keith Norton stating Begay died from "[p]eritonitis and retroperitoneal hemorrhage" and "[b]lunt trauma to the abdomen.
- A signed and notarized statement by Belone that "State's medical examiner Dr. Erik Mitchell stated the only way this injury could occur was by what the defendant did."
- An article from the December 2001 issue of Popular Science about making bicycle handlebars safer for children and reducing the possibility of abdomen injuries. Belone also provided handwritten reproductions of this article and alleged, without a record citation, that his trial counsel "showed it to Dr. Erik Mitchell during trial but did not expand on it or even entered [*sic*] it into evidence for jury to see."

3

- Handwritten excerpts from a "Transcript of Motion on Hearsay Testimony" before the first trial, purporting to show witnesses testifying they saw Begay riding a bike the day of the incident or that she said she was in a bicycle wreck.
- A handwritten reproduction of a letter, allegedly sent to Belone by Dr. Norton, stating that "The manner of death appears to be 'homicide' but could be 'accident.'"

The State moved to summarily dismiss Belone's motion. The State asserted Belone provided no factual support for his ineffective assistance claim related to the lack of an independent forensic expert and that there was no support in the record that Begay had actually been involved in a bicycle accident. The State also asserted that trial counsel's decision not to call an expert witness was a strategic decision. See *Mullins v. State*, 30 Kan. App. 2d 711, Syl. ¶ 2, 46 P.3d 1222 (2002).

The district court summarily dismissed Belone's motion. As for the ineffective assistance claim raised in this appeal, the court found:

"Belone further argues that his attorney acted ineffectively by not hiring a medical expert to testify that Begay sustained her fatal injuries in a bicycle accident. There exists almost no factual support to believe that Begay suffered this alleged accident. When asked at trial, most witnesses denied Begay ever reporting a bicycle crash on the day in question. Only one witness provided slightly conflicting testimony, as he originally said Begay tried to tell hospital personnel that she had been in a bicycle accident. Even so, a doctor who treated Begay testified that he received no other reports about how she sustained her injuries. Moreover, the witness who initially claimed to overhear Begay's report of a bicycle accident no longer felt confident about that report when testifying. Other than Belone's counsel asking medical professionals whether Begay's injuries resembled those sustained in bicycle accidents, it cannot fairly be said that the record supports Belone's claim. Belone's motion provides no independent factual basis to believe Begay had a bicycle accident that caused her fatal injuries. Instead, the motion treats the accident as a foregone conclusion.

"A movant who fails to establish a factual background to support his claims risks summary dismissal. Belone fails to provide any factual support for the bicycle accident, rendering his claim insufficient under K.S.A. 2015 Supp 60-1507 pleading rules. For this reason, Belone's claim that his counsel acted ineffectively by not hiring a medical expert to testify fails.

"Additionally, it is well established that 'the decision to call or not call a certain witness is a matter of trial strategy.' Strategic decisions that result from an attorney's thorough investigation of a case are virtually unchallengeable. As Belone never challenged his attorney's investigation into the evidence, his attorney's choice to not hire a medical expert constitutes a strategic trial decision. In fact, Belone's counsel attempted to refute Mitchell's testimony through cross-examination of the medical experts, pressing the expert on whether Begay's injuries could have come from a bicycle accident. Belone's counsel challenged the State's evidence in ways other than introducing an independent medical expert.

"Because Belone's counsel refuted Mitchell's expert medical testimony, his claim for ineffective assistance of counsel based on that claim fails and is summarily dismissed. [Citations omitted]."

Belone timely appeals.

## ANALYSIS

Belone argues he was entitled to an evidentiary hearing on his ineffective assistance of trial counsel claim. He asserts that independent forensic expert testimony on what caused Begay's fatal injuries was necessary to rebut the State's evidence at trial. He suggests a bicycle accident as an alternative cause. As factual support, Belone points to the documents attached to his motion for appointment of counsel and asserts they were available to his trial counsel but not found in the record. In particular, he asserts the district court failed to properly construe the attachments included with his motion for

appointment of K.S.A. 60-1507 counsel as amendments to the original motion, and that if considered, those attachments showed he was entitled to an evidentiary hearing.

At the outset, it bears mentioning that although Belone raised several ineffective assistance claims in his K.S.A. 60-1507 motion, he only carries forward one on appeal. As a result, we find his remaining claims abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018) (issue not briefed is considered waived or abandoned).

*Our standard of review is de novo.*

When a district court summarily dismisses a K.S.A. 60-1507 motion, this court conducts a de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant has no right to relief. *Beauclair v. State*, 308 Kan. 284, 293, 419 P.3d 1180 (2018). To avoid the summary denial of a motion brought under K.S.A. 60-1507, a movant bears the burden of establishing entitlement to an evidentiary hearing. To meet this burden, the movant must make more than conclusory contentions, and either the movant must set forth an evidentiary basis to support those contentions or the basis must be evident from the record. If the movant makes such a showing, the court must hold a hearing unless the motion is a "'second'" or "'successive'" motion seeking similar relief. *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014) (quoting *Holmes v. State*, 292 Kan. 271, 274, 252 P.3d 573 [2011]). The parties agree that Belone's motion was timely, and since it is his first such motion and raises ineffective assistance claims it would also not be successive. See K.S.A. 60-1507(c), (f).

Because this court has the same access to the motions, files, and records of the case as would the district court, we can review the entire record to determine whether Belone has shown he is entitled to an evidentiary hearing on his K.S.A. 60-1507 motion. In doing so we will consider the attachments he included with his motion to appoint K.S.A. 60-1507 counsel.

6

*The district court did not err in summarily denying Belone's motion.*

To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) that the deficient performance prejudiced the defendant. *Sola-Morales*, 300 Kan. at 882 (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). "'To show prejudice, the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *State v. Sprague*, 303 Kan. 418, 426, 362 P.3d 828 (2015).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. 303 Kan. at 426. In considering deficiency, "there is a strong presumption counsel 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). "An attorney's strategic decisions are essentially not challengeable if the attorney made an informed decision based on a thorough investigation of the facts and the applicable law." *Wilson v. State*, 51 Kan. App. 2d 1, 14, 340 P.3d 1213 (2014).

Belone alleges Greg Robinson was ineffective for not calling an independent forensic expert to refute the State's expert. He suggests that such an expert would have testified that Begay's fatal injuries *could* have stemmed from a bicycle accident. The district court denied this claim, concluding there was no factual support in the record that a bicycle accident occurred and Robinson's chosen method of refuting the State's forensic expert was a strategic choice. Belone challenges these findings, contending the materials attached to his motion for appointment of counsel provided the factual support necessary

7

to warrant an evidentiary hearing on whether Robinson chose not to call an independent expert for strategic reasons. These arguments are not persuasive.

Although not referenced in any of the prior appellate decisions as an alternative cause for Begay's death, the bicycle accident theory was a key part of Belone's defense at trial as seen in Robinson's multiple references during closing arguments. In particular, Robinson cross-examined several of the State's witnesses about whether Begay informed them she had been in a bicycle accident—who all agreed she had not—and presented defense testimony from Dr. David Goering, an internist who treated Begay at the hospital before her death, about whether she could have sustained the injuries in a bicycle accident or from exiting a moving vehicle. Based on the evidence reported to him, including the lack of any report of a bicycle accident, Dr. Goering's opinion was that Begay sustained her injuries as a result of a being assaulted by Belone. While he agreed that it "would be difficult to determine" if Begay sustained her injuries during the assault or a bicycle accident, Dr. Goering said a bicycle accident "just didn't fit with the clinical presentation."

As support for this assertion, Belone cites portions of Keith Bowers' trial testimony, where he said that he told officers he heard Begay tell medical personnel that she was in a bicycle accident. But during trial Bowers could not recall what he told the officers or what he overheard at the hospital. Belone also provided a record citation to a pretrial hearing where his attorney "talks about" an "assertion by [Begay] that she had been in a bicycle wreck." Bowers also testified that he saw Begay riding a bike away from the area a few hours before the assault by Belone. Yet as the State and district court correctly concluded, this evidence does not equate to proof that Begay was involved in a bicycle accident. Moreover, multiple other witnesses testified that Begay never reported a bicycle accident as the cause of her injuries.

In contrast, overwhelming evidence establishes that Belone violently assaulted Begay and caused her injuries. Belone's testimony from the first trial was also read into the record at the second trial. He admitted hitting her in the face with the table leg but claimed it was an accident and that he was defending himself. Yet neighbors saw Belone chasing Begay and hitting her. Other witnesses testified that Begay told them he hit her with a wooden two-by-four. Officers found Begay's blood on the table leg, as well as blood splatter evidence pointing to the fact that the attack occurred in a neighbor's mobile home. Begay's blood was also found on Belone's clothing and in his car. Finally, Dr. Mitchell testified that he ruled Begay's death as a homicide that resulted from the assault. Although he said, "[y]ou could come up with a complex explanation of a car crash or something of that sort," Dr. Mitchell believed the pattern of injuries was consistent with "interpersonal violence." Put simply, just as the district court held, the record lacked factual support that a bicycle accident caused Begay's injuries.

As for the district court's finding that Robinson's method of refuting the State's medical experts through cross-examination was a matter of trial strategy, Belone argues this claim "may require further scrutiny into the decision making process" because "presumptions of strategy are inappropriate." As support, he relies on *Robinson v. State*, 56 Kan. App. 2d 211, 428 P.3d 225 (2018).

Frank Robinson was convicted of reckless second-degree murder and aggravated arson for setting an apartment fire that caused the death of a tenant. The defendant filed a K.S.A. 60-1507 motion alleging ineffective assistance of counsel for failing to present expert testimony to refute the State's fire expert at trial, and the district court held an evidentiary hearing on the motion. After the hearing, the district court determined defendant's attorneys were ineffective for failing to investigate and present sufficient expert testimony and ordered a new trial. The State appealed, arguing that defense counsel's actions fell within reasonable trial strategy and the court could not conclude counsel's decision equated to deficient performance. The panel disagreed, finding that the

district court correctly concluded based on the evidence presented at the hearing that defense counsel's investigation was insufficient. 56 Kan. App. 2d at 226-28 (citing *State v. Cheatham*, 296 Kan. 416, 437, 292 P.3d 318 [2013]).

But here, Belone has never challenged Robinson's *investigation* into the evidence. Instead, Belone simply asserts that "evidence may be required to determine if such a decision was reasoned by investigation, mere convenience, or simply oversight." Yet at no point in his pro se K.S.A. 60-1507 motion or the documents attached to the motion for appointment of counsel does Belone explain what evidence shows that Robinson's investigation was insufficient, or even explain how Dr. Norton might have testified differently than the evidence presented at trial.

Belone also asserts the documents attached to his motion for appointment of counsel showed that Robinson inexplicably chose not to use evidence and available expert testimony which supported a defense that Begay's death was not attributable to Belone's actions. The only materials provided that were not already part of the record were: (1) Dr. Norton's autopsy report; (2) a copy of a magazine article that described how bicycle handlebars can cause abdomen injuries in children; and (3) Belone's handwritten reproduction of a letter allegedly sent by Dr. Norton in September 2006 stating: "The manner of death appears to be 'homicide' but could be 'accident.'" The remaining documents merely provided record citations, so those pieces of evidence were already part of the record.

Belone correctly notes that the record before Belone filed his K.S.A. 60-1507 motion shows only that the district court approved an independent autopsy at Robinson's request in August 2006. The court issued an order to transport the victim's body and approved an "Expert voucher to BIDS $1800/SW Missouri Forensics." As Belone admits, the independent autopsy reached a similar conclusion as Dr. Mitchell, which is that Begay's cause of death was peritonitis due to blunt trauma to the abdomen. In his motion,

Belone implied that Robinson should have called Dr. Norton as a witness to refute Dr. Mitchell's testimony, and that failing to do so left the jury with no alternative explanation for what caused Begay's injuries. However, beyond referencing the article and the letter allegedly sent in September 2006 from Dr. Norton stating that "'The manner of death appears to be "homicide" but could be "accident,"'" in attachments to his motion for counsel, he makes no attempt to explain how Dr. Norton's testimony would have differed, merely stating as a conclusory matter that the jury might have ruled differently if presented with independent medical testimony.

But even Dr. Norton's autopsy report suggested the same conclusion as Dr. Mitchell, which was that Begay's cause of death was peritonitis due to blunt trauma to the abdomen. More importantly, Robinson managed to get substantially the same evidence in at trial through cross-examining the State's witnesses and calling Dr. Goering, who testified that if presented with information of an alternative cause for Begay's injuries, "it would be difficult to determine whether the injury that caused her death was due to the car accident or the assault."

Belone essentially argues that the district court cannot consider Robinson's failure to call an independent forensic expert a matter of trial strategy because Robinson's chosen method—refuting the State's expert—did not succeed at trial. But since there was essentially no evidence to support any other cause for Begay's injuries, it stands to reason that Robinson made an informed decision to refute the State's expert in other ways than calling an independent forensic expert. For these reasons, we find that Belone has not provided sufficient evidentiary support for his ineffective assistance of trial counsel claim to survive summary dismissal.

Affirmed.

11