NOT DESIGNATED FOR PUBLICATION

No. 124,048

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JEFFREY DALE NELSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from McPherson District Court; JOHN B. KLENDA, judge. Opinion filed October 21, 2022. Reversed and remanded with directions.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., MALONE, J., and TIMOTHY G. LAHEY, S.J.

PER CURIAM: Jeffrey Dale Nelson timely appeals the district court's denial of his K.S.A. 60-1507 motion after a limited evidentiary hearing. Because we must accept Nelson's claims as true and Nelson's first habeas counsel testified he failed to fully investigate the issues involving Nelson's conviction beyond his pro se K.S.A. 60-1507 motion for relief, we reverse and remand for an evidentiary hearing.

FACTS

A full narrative of the underlying facts of the case is unnecessary as they were detailed by our Supreme Court in Nelson's direct appeal. *State v. Nelson*, 291 Kan. 475, 476-79, 243 P.3d 343 (2010) (*Nelson I*). Relevant to this appeal, in April 2008, a jury convicted Nelson of first-degree murder, burglary, and three counts of forgery. The district court sentenced Nelson to imprisonment for life with a mandatory minimum term of imprisonment of not less than 50 years for first-degree murder and a consecutive prison sentence of 32 months for burglary. On the three forgery convictions, the district court also sentenced Nelson to eight months' imprisonment for each conviction and ordered them to run concurrent to his sentence for burglary.

In November 2010, our Supreme Court affirmed Nelson's convictions but remanded to the district court to determine whether aggravating factors outweighed any mitigating factors supporting his hard 50 sentence. *Nelson I*, 291 Kan. at 488. Counsel was appointed to represent Nelson at his resentencing, and the district court resentenced Nelson to imprisonment for life with a mandatory minimum term of imprisonment of not less than 50 years for first-degree murder. Our Supreme Court affirmed the district court's sentence. *State v. Nelson*, 296 Kan. 692, 695, 294 P.3d 323 (2013) (*Nelson II*).

In December 2013, Nelson filed a pro se K.S.A. 60-1507 motion, alleging:

- ineffective assistance of trial counsel for failure to consult with Nelson and prepare for trial;
- ineffective assistance of trial counsel for failure to investigate and interview Nelson's sister as a witness;
- ineffective assistance of appellate counsel for failure to raise a claim of ineffective assistance of trial counsel;

- ineffective assistance of appellate counsel for failure to raise a claim of defective jury instructions;
- ineffective assistance of appellate counsel for failure to file a petition for writ of certiorari to the United States Supreme Court; and
- a *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), violation, alleging the State withheld material evidence from pretrial discovery.

The district court appointed Michael P. Whalen to represent Nelson on his K.S.A. 60-1507 motion and held a hearing at which Nelson, his grandmother, trial counsel, and appellate counsel testified.

The record reflects Nelson's first trial resulted in a mistrial. Trial counsel testified he met with Nelson between 6 and 12 times before Nelson's first trial. Nelson and his trial counsel met less frequently between the first and second trial because of the short amount of time between the trials and because they had discussed many times before the main issues and defenses. Trial counsel conducted legal research, reviewed discovery, and followed up on investigating potential trial witnesses. Trial counsel testified he strategically chose not to call character witnesses, including Nelson's grandmother, sister, and girlfriend, to avoid bringing up character issues before the jury—an issue trial counsel had discussed with Nelson. Trial counsel advised Nelson not to testify at trial but explained that was solely Nelson's decision.

Nelson and the State each filed a written memorandum after the hearing to support their positions. Whalen argued Nelson's trial counsel was ineffective for failing to adequately prepare for trial and meet with Nelson. Whalen also argued Nelson's appellate counsel was ineffective for failing to file a petition for writ of certiorari with the United States Supreme Court under *Alleyne v. United States*, 570 U.S. 99, 103, 133 S. Ct. 2151,

3

186 L. Ed. 2d 314 (2013) (any fact that increases mandatory minimum sentence is an "element" that must be submitted to jury and proved beyond reasonable doubt).

The district court denied Nelson's K.S.A. 60-1507 motion. The district court noted Nelson's testimony conflicted with his trial counsel's and found trial counsel's representation fell within the boundaries of competent counsel. The district court also found Nelson's appellate counsel did not provide objectively deficient representation. Nelson appealed, and a panel of this court affirmed. *Nelson v. State*, No. 114,435, 2017 WL 462403, at *18 (Kan. App. 2017) (unpublished opinion) (*Nelson III)*.

In June 2018, Nelson filed a second timely K.S.A. 60-1507 motion, alleging Whalen was ineffective as habeas counsel. The district court ordered a limited evidentiary hearing to hear Whalen's testimony.

At the hearing, Whalen testified that in a K.S.A. 60-1507 case, he would generally ask for the trial counsel's case file in the underlying criminal case about 50 percent of the time before filing a K.S.A. 60-1507 motion on his client's behalf. In Nelson's case, Whalen did not obtain trial counsel's file.

Whalen explained he was appointed as Nelson's habeas counsel about two months before the one-year statute of limitations ran for Nelson to file or amend his K.S.A. 60-1507 motion. Whalen stated he needed only to address the issues Nelson raised in his pro se K.S.A. 60-1507 motion and did not need to address any issues outside of those Nelson raised. Whalen was under the impression, as appointed counsel, he could only represent Nelson within the bounds of Nelson's pro se K.S.A. 60-1507 motion and he could not file a new motion. Whalen did not believe he needed to investigate the underlying criminal case file because of the overwhelming evidence brought against Nelson at trial.

4

While Whalen admitted he could file an amended motion out of time for a private client under manifest injustice, he claimed he could not do the same as appointed counsel. Whalen also believed the record lacked evidence to overcome the standard of manifest injustice and ultimately focused on the hard 50 issue because he thought that was Nelson's only valid claim. Whalen acknowledged the entire record was over 2,000 pages, yet he billed about 4.5 hours to review trial transcripts and research ineffective assistance of counsel claims.

The district court denied Nelson's second K.S.A. 60-1507 motion. The district court found "Whalen vigorously represented [Nelson] on the pertinent issues raised in his pro se motion" and Nelson's second motion was successive. The district court agreed with the State that Whalen had no duty to raise additional issues not raised in Nelson's initial motion.

ANALYSIS

*The District Court Erred in Denying Nelson's K.S.A. 60-1507 Motion Claiming Ineffective Assistance of Habeas Counsel*

Before us Nelson argues his original habeas counsel, Whalen, was ineffective for failing to fully investigate Nelson's case and for failing to raise additional claims of ineffective assistance of trial counsel and resentencing counsel not raised by Nelson in his original pro se K.S.A. 60-1507 motion. Nelson asserts Whalen's deficient performance prejudiced him by depriving him of meritorious claims of ineffective assistance of trial counsel and resentencing counsel.

The State responds Nelson's current K.S.A. 60-1507 motion is successive and, because Nelson knew of the nine other claims of ineffective assistance of trial counsel

5

and resentencing counsel during or just after trial and sentencing, he should have raised those claims in his original K.S.A. 60-1507 motion.

A district court has three options when handling a K.S.A. 60-1507 motion:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.'" *White v. State*, 308 Kan. 491, 504, 421 P.3d 718 (2018).

The district court held a limited evidentiary hearing to determine Whalen's effectiveness as Nelson's habeas counsel before denying Nelson's second K.S.A. 60-1507 motion.

After an evidentiary hearing on a K.S.A. 60-1507 motion, the district court must issue findings of fact and conclusions of law on all issues presented. K.S.A. 2021 Supp. 60-1507(b); Supreme Court Rule 183(j) (2022 Kan. S. Ct. R. at 244). We review the district court's findings of fact to determine whether they are supported by substantial competent evidence and are sufficient to support the district court's conclusions of law. Our review of the district court's ultimate conclusions of law is de novo. *Khalil-Alsalaami v. State*, 313 Kan. 472, 486, 486 P.3d 1216 (2021).

A district court must set aside a movant's conviction if "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 2021 Supp. 60-1507(b). The right to *effective* counsel is embodied in the Sixth Amendment to the United States Constitution and "plays a crucial role in the adversarial system." *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 (1984); see

*Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985) (adopting *Strickland*). Ineffective assistance of counsel can be categorized into three subgroups, one of which is a claim that defense counsel's performance was so deficient the defendant was denied a fair trial. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014). That is, "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> "To prevail on a claim of ineffective assistance of trial counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice, i.e., that there is a reasonable probability the jury would have reached a different result absent the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984])." *State v. Salary*, 309 Kan. 479, 483, 437 P.3d 953 (2019).

There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment. The burden is on Nelson to establish counsel's representation fell below an objective standard of reasonableness viewed at the time of counsel's conduct. See *Strickland*, 466 U.S. at 688-90.

*Timely and not successive*

The State contends Nelson's motion should be barred as successive and untimely. The State argues Nelson needed to list all grounds for relief in his first K.S.A. 60-1507 motion and easily could have included the additional claims he argues now because they ultimately relate back to ineffectiveness claims against trial counsel and resentencing counsel. The State also explains Nelson exceeded the one-year time limitation and failed to make a showing of manifest injustice. We find the State's argument unpersuasive.

Nelson's one-year time limitation to challenge Whalen's ineffectiveness began on December 29, 2017, when the mandate issued on his first K.S.A. 60-1507 motion. See *Rowell v. State*, 60 Kan. App. 2d 235, 241, 490 P.3d 78 (2021). Nelson filed his second K.S.A. 60-1507 motion, alleging ineffective assistance of habeas counsel on June 15, 2018—within one year from the mandate of the first K.S.A. 60-1507 motion. We find Nelson's motion is timely and not successive because he timely challenged the effectiveness of Whalen's performance as counsel for Nelson's first K.S.A. 60-1507 motion.

*Deficient performance*

If counsel made strategic decisions after making a thorough investigation of the law and facts relevant to the realistically available options, then counsel's decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91. While some aspects of a criminal case remain with the accused—such as what plea to enter, whether to waive a jury trial, or whether to testify—other aspects of a criminal case—such as what witnesses to call, whether and how to conduct cross-examination, and other strategic and tactical decisions—are left to the defense counsel. *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 (2012). Simply invoking the word "'strategy'" does not protect "'the performance of a criminal defendant's lawyer from constitutional criticism.'" *Sola-Morales*, 300 Kan. at 887.

Nelson, as the movant claiming ineffective assistance of counsel, bears the burden to prove trial counsel's alleged deficiencies did not result from strategy. 300 Kan. at 888. Nelson also bears the burden to establish (1) Whalen's performance was deficient under the totality of the circumstances and (2) there is a reasonable probability Nelson's first K.S.A. 60-1507 motion would have had a different outcome if Whalen had not performed deficiently. See *Salary*, 309 Kan. at 483.

8

While Whalen claimed to make strategic decisions throughout his representation of Nelson, he failed to make a thorough investigation of Nelson's claims and the underlying criminal case. "'[W]hen counsel lacks the information to make an informed decision due to inadequacies of his or her investigation, any argument of "trial strategy" is inappropriate.'" *Thompson v. State*, 293 Kan. 704, 716, 270 P.3d 1089 (2011).

Whalen's performance as habeas counsel was deficient for failing to thoroughly investigate Nelson's case. Whalen testified at the limited evidentiary hearing his representation was limited to the issues raised in Nelson's pro se K.S.A. 60-1507 motion. Whalen is seemingly under the impression his duty of representation differs depending on whether he is appointed by the district court to represent a criminal defendant or he is retained. That is incorrect. "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Strickland*, 466 U.S. at 685; see *State v. Patton*, 287 Kan. 200, 223-24, 195 P. 3d 753 (2008) (expectation of objectively reasonable performance applies to appointed and retained counsel). The United States Supreme Court later noted "the constitutional guarantee of effective assistance of counsel at trial applies to every criminal prosecution, without regard to whether counsel is retained or appointed." *Evitts v. Lucey*, 469 U.S. 387, 395, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). When a defendant is represented in a postconviction proceeding, counsel's assistance "should not be a useless formality." *Brown v. State*, 278 Kan. 481, 484, 101 P.3d 1201 (2004). Whalen had the duty to review the entire file and timely determine whether Nelson's pro se K.S.A. 60-1507 motion needed to be amended before the expiration of the one-year time limit.

*Prejudice*

Nelson argues a full evidentiary hearing is required to determine the merits of his ineffective assistance of habeas counsel claims. Nelson lists nine claims of ineffective assistance of trial counsel and resentencing counsel, claiming habeas counsel was

9

ineffective for failing to raise such issues. In his reply brief on appeal, Nelson responds to the State, suggesting the prejudice he suffered resulted from Whalen's failure to investigate and uncover the nine other claims of ineffective assistance of trial counsel and resentencing counsel, warranting K.S.A. 60-1507 relief.

To establish prejudice, Nelson must show with reasonable probability the deficient performance affected the outcome of the proceedings under the totality of the circumstances. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Khalil-Alsalaami*, 313 Kan. at 486. Nelson listed nine claims of ineffective assistance of habeas counsel; however, in the interests of clarity, his issues can be condensed into five claims:

- failing to address trial counsel's failure to raise hearsay and Confrontation Clause objections to testimonial statements of the victim to law enforcement;
- failing to address trial counsel's failure to investigate and put on a mental disease or defect defense at trial and as mitigating evidence at sentencing and failing to investigate and put on evidence of Nelson's mental health history;
- failing to address trial counsel's failure to object to, investigate, impeach, move to suppress, and/or move for a mistrial based on Amber Moore's testimony and statements to law enforcement;
- failing to address trial counsel's failure to suppress Nelson's confession to law enforcement; and
- failing to address trial counsel's failure to investigate and impeach Keith Hewitt's testimony.

*Failing to raise hearsay and Confrontation Clause objections to testimonial statements of the victim to law enforcement*

Nelson argues Whalen was ineffective for failing to raise a claim of ineffective assistance of trial counsel because trial counsel did not raise a hearsay and Confrontation Clause objection to testimonial statements of the deceased victim to law enforcement.

Under the Confrontation Clause of the Sixth Amendment to the United States Constitution, a criminal defendant enjoys the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Further, testimonial statements include those made during police interrogations. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). There is an exception to the Confrontation Clause under the doctrine of forfeiture by wrongdoing: "The rule provides that when a witness is absent by the criminal defendant's procurement, the defendant cannot assert a violation of his or her constitutional right to confrontation. [Citation omitted.]" *State v. Jones*, 287 Kan. 559, 567, 197 P.3d 815 (2008). In *Giles v. California*, 554 U.S. 353, 361-62, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), the United States Supreme Court clarified the State must show the defendant intended to prevent the witness from testifying.

*Giles* was decided about two months after Nelson's jury trial. Because Nelson's case was pending appeal at the time *Giles* was decided, *Giles* applies here.

Under the *Giles* standard, the State provided evidence Nelson intended to prevent the victim from testifying. In fact, the district court noted at Nelson's original sentencing hearing:

> "I am finding that pursuant to K.S.A. 21-4636 subsection E, the defendant committed the
> crime in order to avoid or prevent a lawful arrest or prosecution. There was evidence

11

[presented] during the trial that that was exactly the reason why the victim of the case was killed. I believe the evidence strongly points to that conclusion. . . .

"Finally in the last aggravating factors that I find this . . . case is subsection H of the section which reads the victim was killed while engaging in or because of the [victim's] performance or prospective performance of the [victim's] duties as a witness in the criminal proceeding. I think this is closely tied to subsection E but I think it's equally applicable. I think it's clear from the evidence he broke into the [victim's] house. He stole from the victim. Went out, forged the checks, realized that his stepfather was a, certainly a risk against him. I think the testimony of Mr. Hewitt is condemning in that regard where he was recruited to go along with [Nelson] to cause injury to the victim. And he ultimately went alone with a baseball bat that he had purchased ahead of time. And I think that clearly shows that he was going for the purposes of silencing the victim."

At resentencing, the district court noted the same aggravating factors supporting Nelson's hard 50 sentence.

We find because Whalen never fully investigated this issue for Nelson's benefit while prosecuting his first K.S.A. 60-1507 motion, we must remand this issue to the district court for an evidentiary hearing to consider whether Whalen's failure to investigate affected the proceedings under the totality of the circumstances.

*Failing to investigate and put on a mental disease or defect defense at trial and as mitigating evidence at sentencing and failing to investigate and put on evidence of Nelson's mental health history*

Nelson claims Whalen was ineffective for failing to raise a claim of ineffective assistance of trial counsel and resentencing counsel for failing to raise a mental disease or defect defense at trial and as mitigating evidence at sentencing. Nelson also argues Whalen was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failing to put on evidence of Nelson's mental health history.

12

The defense of lack of mental state statute in effect when the crimes were committed, K.S.A. 22-3220, stated: "It is a defense to a prosecution under any statute that the defendant, as a result of mental disease or defect, lacked the mental state required as an element of the offense charged. Mental disease or defect is not otherwise a defense."

Before Nelson's jury trial, and on Nelson's trial counsel's motion, the district court ordered a competency evaluation to determine whether Nelson was competent to stand trial. The report found Nelson was competent to stand trial but advised Nelson would benefit from a more in-depth psychological evaluation due to his reported history of mental illness. No one in the trial process addressed this recommendation. At the competency evaluation, Nelson reported he was diagnosed as a child with Tourette's syndrome, attention deficit hyperactivity disorder, obsessive compulsive disorder, and bipolar disorder. Based on the competency evaluation, the district court found Nelson competent to stand trial, explaining he could understand the nature and purpose of the proceedings against him and could make, or assist in making, his defense.

At Nelson's first K.S.A. 60-1507 hearing, trial counsel explained he had tried between 150 and 200 criminal jury trials in his career as a criminal defense attorney, including the representation of Nelson. Trial counsel explained he reviewed all the discovery in Nelson's case and there was "substantial litigation about what could and could not come into evidence regarding Jeff Nelson's criminal past, previous psychological evaluations of him, arrests, [and] incarcerations." During the hearing, trial counsel testified that during the trial he was careful not to open the door to character issues he did not want the jury to hear.

Resentencing counsel presented mitigating evidence about the victim sexually abusing Nelson as a child. In fact, resentencing counsel argued to the district court: "[T]he crime was committed while the defendant was under extreme or under the

13

influence of extreme mental or emotional disturbance." The district court noted the evidence showed Nelson had planned the incident. The district court addressed the mitigating circumstances, specifically the abuse Nelson suffered as a child, but found aggravating circumstances outweighed mitigating circumstances. The district court also explicitly stated it considered Nelson's competency evaluation as a mitigating factor.

At the limited evidentiary hearing related to Nelson's second K.S.A. 60-1507 motion, Whalen testified:

"I did not see, from the evidence presented in the case, how a mental health defense would have been [effective] in this case. There's evidence of planning. There was evidence from the forensic evidence as well as the autopsy evidence. [The victim] appeared to have been dealt a blow while in his bed. It was planned. [Nelson] had somebody acting as lookout for him. There were no defensive wounds and the blood trails did not support the self defense. It did not support the statement contained within the new petition where . . . Mr. Nelson's current expert was quoted in there was that seeing [the victim] in his underwear may have acted as a trigger and then—the statement, when I read it, did not take into account the facts of this case. It looked as though it was based merely on Mr. Nelson's statement of we got into it and he came out after me and we fought and we struggled and did all of this. None of that was supported by the forensic evidence. This was a planned incident and I don't think that there would have been any difference, even if you had had that information, to meet the standard necessary to present a mental health or mental illness defense, mental defect."

The record fails to disclose the full nature of Whalen's investigation on this point. Nelson asserts on appeal a mental disease or defect defense would have changed the calculus as to what the jury considered during the guilt phase of the trial or the district court's sentence during both sentencing phases of the proceedings. Whalen's failure to investigate the underlying case file suggests he was unaware Nelson's competency evaluation advised that Nelson would benefit from a more in-depth psychological evaluation due to his history of mental illness. Whalen's failure to raise a claim of

14

ineffective assistance of trial counsel and resentencing counsel for not seeking a more in-depth psychological evaluation of Nelson to present a mental disease or defect defense or putting on evidence of Nelson's mental health history at resentencing could have affected the outcome of the proceedings under the totality of the circumstances. We remand for an evidentiary hearing on this issue.

*Failing to object to, investigate and impeach, suppress, and/or move for a mistrial based on Amber Moore's testimony and statements to law enforcement*

Nelson contends Whalen was ineffective for failing to raise claims of ineffective assistance of trial counsel for failing to (1) object to Moore's testimony on the basis the State entered an improper agreement with Moore in exchange for her testimony; (2) move to suppress involuntary statements Moore made to law enforcement; (3) request a mistrial when Moore testified Nelson sent two women after her to intimidate her from testifying; and (4) investigate and impeach Moore's trial testimony based on prior inconsistent statements to law enforcement.

In Nelson's brief to the district court on his second K.S.A. 60-1507 motion, Nelson claimed Moore testified at Nelson's jury trial that law enforcement threatened to take her children and charge her as an accessory if she did not cooperate. Nelson suggested to the district court the State offered Moore an illegal immunity agreement because the agreement may have required her to testify to a certain set of facts.

At trial, contrary to her testimony at Nelson's preliminary hearing, Moore testified she was not threatened and she later made an agreement with the State on October 2, 2007, in which the State would not prosecute her for any matters involved in Nelson's trial. Moore testified she voluntarily went to the police station to provide an alibi for Nelson. Moore explained law enforcement officers did not threaten her and were trying to

15

figure out what happened. Moore admitted the officers interviewing her made it sound like she was involved in the murder. She testified that before making an agreement with law enforcement, she had already provided a full written statement of what had happened without receiving any promises.

Given the conflict between Moore's preliminary hearing testimony and her trial testimony, it appears Whalen was ineffective for failing to investigate the case file to determine whether an issue existed with Moore's trial testimony. Because most of Moore's testimony was prejudicial to Nelson, there might be a substantial issue as to whether the State entered an improper agreement with Moore requiring her to testify in a certain way. Because it does not appear from the record Whalen investigated this claim, we remand for an evidentiary hearing on this issue.

*Failing to suppress Nelson's confession to law enforcement*

Nelson next argues Whalen was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failing to suppress Nelson's confession to law enforcement. "When a defendant challenges his or her statement to a law enforcement officer as involuntary, the prosecution must prove the voluntariness of the statement by a preponderance of the evidence." *State v. Randolph*, 297 Kan. 320, 326, 301 P.3d 300 (2013). But trial counsel explained Nelson's written confession contained helpful information to his defense. As such, Nelson strategically waived a *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964), hearing to determine whether his confession was voluntary and could be admitted at trial. The district court directly asked Nelson if he agreed with his trial counsel's position, and Nelson responded he did.

At Nelson's trial, a McPherson police department detective testified that before Nelson gave a written confession, Nelson sent an inmate staff request form stating he would like to speak to the police chief about his attempted murder charge. Nelson

16

explained in his request he was struggling to deal with the charge and would like to speak to the police chief as soon as possible. The detective then interviewed Nelson. It does not appear from the record Whalen investigated this issue to determine whether Nelson's confession was truly voluntary and whether he waived his right to have counsel present at the interview. A substantial issue exists about the circumstances of Nelson's confession and possibly the decision not to proceed with a *Jackson v. Denno* hearing. We remand this issue for an evidentiary hearing.

### *Failing to investigate and impeach Keith Hewitt's testimony*

Nelson finally contends Whalen was ineffective for failing to raise a claim of ineffective assistance of trial counsel for failing to investigate and impeach Hewitt's testimony. Nelson suggests trial counsel should have presented evidence of Hewitt's mental health, criminal history, and potential deal with the State in exchange for his testimony. Nelson's trial counsel could make strategic decisions, including what witnesses to call and whether and how to conduct cross-examination. See *Edgar*, 294 Kan. at 838. Trial counsel cross-examined Hewitt and impeached Hewitt on prior inconsistent statements. Hewitt also testified Nelson did not intend to kill the victim. But Whalen failed to investigate the underlying case, and it is unclear whether trial counsel knew of Hewitt's potential deal with the State in exchange for his testimony and the extent of Hewitt's mental health issues. Thus, we remand to the district court for an evidentiary hearing on this issue.

### *The District Court Erred in Summarily Dismissing an Alleged* Brady *Violation Without an Evidentiary Hearing*

Nelson argues the district court erred in denying him a full evidentiary hearing on his *Brady* claim. Nelson contends the State failed to disclose Hewitt was charged with a crime of dishonesty around the time of Nelson's trial and the State dismissed the charge

17

after Hewitt testified against Nelson. Nelson asserts he could have used such information to impeach Hewitt's testimony that Nelson offered to compensate Hewitt to help Nelson injure the victim. Nelson suggests he was unaware of the dismissed charge until 2018. Nelson asks us to remand for a full evidentiary hearing on the issue to determine whether there is a claim of ineffective assistance of trial counsel, a *Brady* violation, or both.

The movant bears the burden to prove a K.S.A. 60-1507 motion warrants an evidentiary hearing by making more than conclusory contentions and stating an evidentiary basis in support of the claims. *Mundy v. State*, 307 Kan. 280, 304, 408 P.3d 965 (2018). In deciding whether an evidentiary hearing must be held, the district court generally must accept the factual allegations set out in the motion as true. See *Hogue v. Bruce*, 279 Kan. 848, 850, 113 P.3d 234 (2005). But the factual allegations must be specific, not "'mere conclusions.'" *Mundy*, 307 Kan. at 304. We have de novo review over a summary dismissal of a K.S.A. 60-1507 motion. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007).

The State cannot withhold favorable evidence to an accused "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. "[A] *Brady* violation is reviewed de novo with deference to a trial court's findings of fact, but the trial court's denial of the defendant's motion for new trial is reviewed under an abuse of discretion standard." *State v. Warrior*, 294 Kan. 484, 510, 277 P.3d 1111 (2012).

There are three elements of a *Brady* violation:  "(1) '"The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching"'; (2) '"that evidence must have been suppressed by the State, either willfully or inadvertently"'; and (3) the evidence must be material so as to establish prejudice. [Citations omitted.]" *Warrior*, 294 Kan. at 506. If there is a reasonable probability the

18

outcome of the proceeding would differ had the State disclosed the evidence, the evidence is considered material. 294 Kan. at 507.

In September 2007, the State charged Hewitt with drawing a check with intent to defraud—a crime of dishonesty. Nelson's trial, in which Hewitt testified that Nelson offered to pay Hewitt $500 to help "take care of" the victim, was in April 2008. The State moved to dismiss the charge against Hewitt on July 17, 2008, and the district court dismissed the charge without prejudice. Nelson suggests the State made an agreement with Hewitt to dismiss the charge against him in exchange for his testimony against Nelson.

Evidence of a witness' crime of dishonesty can be used for impeachment purposes. *State v. Laughlin*, 216 Kan. 54, 55, 530 P.2d 1220 (1975) ("[N]o witness on cross-examination may be impeached concerning former convictions unless they involved crimes of 'dishonesty or false statement.'"); see K.S.A. 60-421 ("Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility."). The State's charge against Hewitt was public record, but such information was more readily known to the State than to Nelson or the public, especially considering the prosecutor in Hewitt's case was also involved in Nelson's case. It does not appear from the record Whalen investigated this issue. Thus, a substantial question exists as to whether the pending charge was material and/or admissible for Nelson's use during his cross-examination of Hewitt. We remand for an evidentiary hearing on this issue.

Reversed and remanded with directions.

19