No. 99,176

STATE OF KANSAS, *Appellee*, v. CHRISTOPHER A. BELONE, *Appellant*.

(285 P.3d 378)

Opinion filed September 21, 2012.

*Michelle Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Eve A. Kemple*, assistant district attorney, argued the cause, and *Mark A. Simpson*, assistant district attorney, *Charles E. Branson*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Christopher A. Belone seeks review of the Court of Appeals' decision affirming his convictions for second-degree murder, kidnapping, and other crimes related to the beating death of Linda Begay, his long time companion. Belone raises a number of issues, but our agreement with his claim that the trial court violated his right of confrontation by admitting testimonial statements into evidence and our determination that the error was not

harmless dispose of this appeal. Accordingly, we reverse and remand for a new trial.

## FACTUAL STATEMENT

Begay's unfortunate death on August 1, 2006, from peritonitis resulted from a tear in her small bowel which was, in turn, caused by blunt force trauma to her stomach, which the State alleges was inflicted by Belone with a board or table leg some 3 days earlier, on July 29. The Court of Appeals related the facts as follows:

"In the late afternoon on July 29, 2006, Officers Anthony Brixius and Micah Stegall of the Lawrence Police Department responded to a call at the Gaslight Trailer Park based on reports of criminal damage to property and a possible domestic abuse. Keith Bowers told Officer Brixius that he had taken Linda Begay to the hospital after she came to his window and said that her boyfriend, Belone, had beat her up at Frank Mallonee's trailer.

"At the hospital, the officers found Begay to be extremely intoxicated. She had a large cut on the bridge of her nose, blood on her face, and bruises on her arms. Officer Brixius testified that in questioning Begay, she was loud and animated and stated that 'he fucking beat me up.' She said that it was her boyfriend, Belone, who had beaten her. Officer Brixius testified Begay stated she woke up in Mallonee's trailer to being dragged out of bed by Belone. Belone was hitting her with his fists and yelling at her about cheating. Belone hit Begay in the stomach and face with a board (a table leg) and then he dragged her by her hair out of the trailer and into his truck. Begay told Officer Brixius that she was able to grab the board and jump out of the truck.

"Begay ran around the trailer park asking for help and eventually went back to the trailer where she lived with Belone, their young son, and Belone's mother. She banged on the window telling her mother-in-law, 'Get your fucking stupid ass out here. Get—your stupid ass son is doing something.' When no one responded at the trailer, she threw the table leg through the window and then went to Bowers' trailer for help.

"In a bedroom of Mallonee's trailer, Officer Brixius discovered blood on the floor, a mattress, and two wrapped up t-shirts. He also found a large clump of hair on the pillow. In the bathroom, he found blood on the floor and streaks of blood around the sink. There was an over-turned table with one leg missing. Virginia Belone indicated that Begay threw a table leg through her trailer window. Officer Stegall confirmed that table leg was the missing leg from the table in Mallonee's trailer.

"Officer Brixius returned to the hospital later in the evening when Begay was calmer and resting. He made an audio recording of his interview with her in which she confirmed that Belone was the person who beat her and forced her into his truck. The recording of the interview was played for the jury. Officer Brixius

testified the recorded interview was consistent with the main details of his initial interview without all the yelling and animation.

"At the hospital, medical personal documented Begay's broken nose, sore neck, swollen throat, abdominal pain, right hip pain, and bruises on her arms, chest, buttocks and legs. Dr. Ryan Davis documented the stomach pain and indicated that CT scans showed fluid leakage in her bowel. Dr. Davis testified that Begay was doing better the second day, but her condition declined the third day and another CT scan revealed a worsening of her internal abdominal injuries. The coroner, Dr. Erik Mitchell, testified that Begay died on August 1, 2006, from peritonitis caused by blunt trauma to the abdomen causing a tear in the small bowel.

"Multiple witnesses confirmed that Belone and Begay were in the truck together. The witnesses heard screams, saw Begay jumping out of the truck with the table leg, and saw Begay's broken nose. Mallonee, who had been drinking most of the night before, testified that on the morning in question, Begay woke him up and she then drank a large bourbon and Coke. Mallonee said that Begay laid down on the bed in his bedroom and pulled her shorts down. He said he tried to have sex with her but he was unable to do so.

"Belone took the stand in his own defense. He testified that he was at Mallonee's trailer looking for Mallonee to help him build a porch. He said that he found Begay in the back bedroom naked from the waist down. He claimed he tried to get her dressed, but she attacked him. He said that he must have accidentally hit her in the nose as they struggled. Belone said he tried to clean her up in the bedroom and then they left in his truck to go home, but she jumped out of the truck.

"The State ultimately charged Belone with second-degree murder, kidnapping, obstructing legal process or official duty, and violating a protective order. After a lengthy trial, the jury convicted Belone as charged. The trial court sentenced Belone to a presumptive imprisonment term of 586 months for second-degree murder and concurrent incarceration terms of 59 months for kidnapping, 6 months for obstruction, and 12 months in the county jail for violating a protective order.

"Belone filed multiple motions for a new trial, alleging improper admission of prior bad acts, juror misconduct, violation of the sequestration order, perjury by a State's witness, nondisclosure of exculpatory evidence against a State's witness, and new case law regarding the Confrontation Clause of the Sixth Amendment to the United States Constitution. The trial court denied the motions." *State v. Belone*, No. 99,176, 2010 WL 173950, at °1-2 (Kan. App. 2010) (unpublished opinion).

## PROCEDURAL HISTORY

Prior to trial, the State filed a motion requesting that the court find that the statements Begay made to Bowers, to the emergency

room staff, and to the investigating officers were all admissible at trial. The State based its argument on the exception to the right of confrontation known as the rule of forfeiture by wrongdoing. The district court initially ruled that the statements Begay made to her friend Bowers and to the medical professionals were nontestimonial and, therefore, not precluded by the Confrontation Clause. But the district court also concluded that the State had not met its burden to prove by a preponderance of the evidence that Belone was responsible for Begay's unavailability by causing her death, and thus her testimonial statements to the officers, including the audio recording of the hospital interview, were not admissible because of Belone's right of confrontation. At some point not disclosed by the record, the district court reversed itself and determined the statements to the officers fit within the forfeiture by wrongdoing exception.

After the district court denied a motion for new trial in which Belone renewed his argument that the admission of Begay's statements to the investigating officers violated his confrontation rights, he asserted that argument again to the Court of Appeals. The Court of Appeals agreed with Belone, finding "that the trial court erred in this case by holding that the killing of Begay forfeited Belone's rights under the Confrontation Clause and then admitting Begay's testimonial statements at trial." *Belone*, 2010 WL 173950, at *5. Specifically, the panel found that the trial court had not complied with the holding in *State v. Jones*, 287 Kan. 559, 567-68, 197 P.3d 815 (2008), where we explained that the rule of forfeiture by wrongdoing only applies where the State has shown by a preponderance of the evidence that the defendant's act in causing the witnesses unavailability was "intended to prevent the witness from testifying." Nevertheless, the panel found the error was harmless because of "overwhelming" evidence. *Belone*, 2010 WL 173950, at *5. We granted review.

## HARMLESSNESS OF A CONFRONTATION CLAUSE VIOLATION

### Standard of Review

" 'We employ an unlimited standard of review when addressing issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States

Constitution.' *State v. Leshay*, 289 Kan. 546, 547, 213 P.3d 1071 (2009); *State v. Ransom*, 288 Kan. 697, 708-09, 207 P.3d 208 (2009) (whether confrontation rights have been violated is a question of law subject to unlimited review)." *State v. Marquis*, 292 Kan. 925, 928, 257 P.3d 775 (2011); *accord State v. Bennington*, 293 Kan. 503, 507, 264 P.3d 440 (2011).

In determining whether a fundamental failure in a trial is harmless, we employ a de novo review of the entire record. *State v. Ward*, 292 Kan. 541, Syl. ¶ 8, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012).

*Analysis*

When Belone's trial was conducted in March 2007, the participants had the benefit of the benchmark decision in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). *Crawford* held that the admission of a witness' testimonial statements against a defendant violates the defendant's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution unless the witness is available to testify or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. 541 U.S. at 68; see *Bennington*, 293 Kan. at 508.

One recognized exception to the right of confrontation, however, is the doctrine of forfeiture by wrongdoing. 541 U.S. at 62. That doctrine provides that a defendant who obtains the absence of a witness by his or her own wrongdoing forfeits his or her constitutional right to confrontation. At the time of Belone's trial, the law in Kansas only required the State to show by a preponderance of the evidence that the defendant was responsible for the witness' unavailability in order to trigger the forfeiture by wrongdoing exception. See *State v. Meeks*, 277 Kan. 609, 615-16, 88 P.3d 789 (2004).

Later, after Belone's trial, the United States Supreme Court clarified that the forfeiture by wrongdoing exception only applies where the State has proved by a preponderance of the evidence that the defendant's act of wrongdoing was specifically intended to prevent the witness' testimony. See *Giles v. California*, 554 U.S. 353, 368, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008). This court

followed suit in *Jones*, 287 Kan. at 568, where we refused to apply the forfeiture by wrongdoing exception because the State had failed in its burden to show that Jones killed the victim with the intent to prevent the victim's subsequent testimony at trial.

Obviously, the trial court here did not have the benefit of those decisions and understandably, but surely, applied an incorrect standard. The State did not show that Belone killed Begay for the purpose of preventing her from testifying at trial. At most, the evidence suggested that the killing was motivated by jealousy. Moreover, the State's attempt to carve out a different rule for domestic violence cases is unavailing. Accordingly, we affirm the Court of Appeals' holding that the district court erred in admitting Begay's testimonial statements to the police "because the *Giles* requirements as set forth in *Jones*, 287 Kan. at 567-68, were not met." *Belone*, 2010 WL 173950, at *5.

Where we part company with the panel is in the harmless error analysis. Again, in the interest of fairness to the panel, we have the advantage of caselaw that was not available to the Court of Appeals when it decided this case in January 2010. It relied upon *State v. Nguyen*, 281 Kan. 702, Syl. ¶ 6, 133 P.3d 1259 (2006).

In July 2011, we clarified that the test for determining harmless error "is whether the error affected substantial rights, meaning whether the error affected the outcome of the trial." *Ward*, 292 Kan. 541, Syl. ¶ 6. We then held that the degree of certainty by which the reviewing court must be persuaded that the error did not affect the trial outcome will vary depending upon whether the error infringed upon a federal constitutional right. We then explained:

"If the fundamental failure infringes upon a right guaranteed by the United States Constitution, the trial court should apply the constitutional harmless error standard defined in *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh. denied* 386 U.S. 987 (1967),] in which case the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict. An appellate court will use the same analysis . . . ." *Ward*, 292 Kan. 541, Syl. ¶ 6.

The Court of Appeals was influenced by "the sheer volume of witnesses testifying about the attack and kidnapping." *Belone*, 2010 WL 173950, at *5. But none of the witnesses, other than Belone and Begay, had first-hand knowledge of the entire incident. Playing an audio recording of Begay relating her version of the entire event is certainly more compelling evidence than presenting pieces of the puzzle from a number of different witnesses.

Here, the State has simply failed to carry its burden of showing that there is no reasonable possibility that the violation of Belone's confrontation rights contributed to the verdict. Without that degree of certainty, we cannot declare the error to be harmless. We must reverse and remand for a new trial. Given that disposition, we need not address Belone's other claims of error.

Reversed and remanded for new trial.