CORRECTED OPINION

NOT DESIGNATED FOR PUBLICATION

No. 126,164

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

HENRY E. PARKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Oral argument held May 20, 2025. Opinion filed June 20, 2025. Affirmed.

*Clayton J. Perkins* and *Hope E. Faflick Reynolds*, of Capital Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., SCHROEDER and GARDNER, JJ.

PER CURIAM: Henry E. Parker was convicted of shooting at police officers in riot gear controlling the crowd at a protest. He now timely appeals from his convictions for two counts of aggravated battery on a law enforcement officer, 18 counts of aggravated assault on a law enforcement officer, and one count of criminal possession of a firearm. Parker claims: (1) The admission of a witness' statements violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution; and (2)

1

criminal possession of a firearm by a convicted felon under K.S.A. 21-6304(a)(3)(A) violates section 4 of the Kansas Constitution Bill of Rights. Because we find Parker failed to preserve these issues, we affirm Parker's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

In the late evening of June 1, 2020, into the early morning hours of June 2, 2020, Wichita police officers were responding to a protest near the intersection of 21st Street and Arkansas Street that had gotten out of hand. Police officers in riot gear had formed a line to disperse the protestors. The officers heard gunshots and believed someone was shooting at them. Several officers heard bullets going by, and others saw muzzle flashes. Two officers' helmets were struck by bullets, but none of the officers suffered physical injuries. A bystander filming the events captured video of the shooter.

Shortly thereafter, the police issued a press release asking for the public's help in identifying the shooter and offered a reward for the information. Davion Gunter contacted law enforcement and spoke with Detective Dallas Boone of the Wichita Police Department. Gunter gave a recorded interview, stating he did not know the identity of the shooter. However, Gunter explained he saw the shooter exit a black Ford Mustang and take off his shirt, revealing a white tank top underneath. The shooter was wearing dark pants. He put the gun on the roof of the car and put on a black face mask. The shooter put the gun on his right side, walked toward a fence, fired six to eight shots, then got back into the Mustang and drove away. Gunter later went to a nearby gas station and saw the same man working behind the counter. Gunter provided Boone directions to the gas station. Later that day, Gunter called Boone and gave him Parker's name, stating Parker worked with Gunter's brother at the gas station, and directed Boone to Parker's Facebook page. Gunter was paid $1,000 for the information he provided to law enforcement.

The State charged Parker with two counts of aggravated battery on a law enforcement officer, 19 counts of aggravated assault on a law enforcement officer, and one count of criminal possession of a firearm. At Parker's preliminary hearing, Gunter testified he did not recall the events surrounding the shooting or any statements made to law enforcement. The State asked Gunter over a dozen questions on direct examination regarding the shooting incident, to which Gunter responded he had no recollection. Following Gunter's direct examination, Parker indicated he had no questions for Gunter on cross-examination. The district court allowed the State to question Boone about Gunter's prior statements. Parker was bound over for trial on all charges.

At trial, Gunter again asserted he had no recollection of the events or any statements he made to law enforcement and said reviewing police reports or recordings of his statements would not refresh his recollection. Over Parker's objection, the district court found Gunter was an unavailable witness and said it would allow the State to admit Gunter's recorded statements through Boone. However, Parker did not renew his objection when the recordings were ultimately admitted during Boone's testimony. In fact, Parker stated he had no objection when the State moved to admit the recordings.

Several other witnesses testified at trial. Charles Wilson testified he was the manager of a nearby store and was standing outside with a repairman who was fixing a window that had been broken earlier that evening. Wilson heard the gunshots shortly after the police line passed by his store. The next morning, Wilson saw a video of the shooting in his Snapchat feed. He recorded the video and provided it to the police department. Law enforcement officers had also viewed and captured video of the shooting that had been live streamed by a bystander, Meko Haze. Wilson's and Haze's videos were used in law enforcement's press releases asking the public for help identifying the shooter.

Elizabeth Rouse testified she worked with Parker at the JumpStart gas station approximately a mile away from the location of the shooting. She and Parker were working that night, and Parker briefly left the store, claiming he needed to pick someone up. Parker was wearing a white tank top and blue denim jeans with an unusual pattern. Rouse had seen the video that police released of the shooting and believed Parker was the shooter based on the shooter's build and clothing. The following day, Rouse asked Parker if he was the shooter, and Parker admitted he was but asked Rouse not to tell anyone. Rouse later overheard Parker telling some customers he was the person who shot at the officers.

Officer Brock Kampling testified he went to the JumpStart gas station to investigate. Kampling saw a black Mustang in the parking lot, which was registered to Parker. He also observed a red lanyard inside the vehicle, which caught his attention because it appeared similar to one that was hanging out of the shooter's pocket in the Snapchat video. Detective Nicholas Halls interviewed Rouse at the JumpStart and also obtained the store's security footage from the night of the incident. The security video showed Parker leaving the parking lot at 1:13 a.m. and returning at 1:25 a.m. Parker was wearing a white tank top and blue jeans in the security video.

At trial, the State dismissed one count of aggravated assault on a law enforcement officer because the officer no longer lived in Kansas and did not testify. The jury found Parker guilty of all remaining charges. The district court imposed a total controlling sentence of 300 months' imprisonment. Additional facts are set forth as necessary.

ANALYSIS

*The district court did not err in admitting Gunter's recorded statements during Boone's testimony.*

Parker first argues he was denied the rights guaranteed by the Confrontation Clause of the Sixth Amendment to the United States Constitution because Gunter did not answer any questions about the incident at the preliminary hearing or trial. He asserts he did not have a meaningful opportunity to cross-examine Gunter; therefore, the district court improperly admitted Gunter's recorded statements from the calls made to Boone. The State argues this issue was not properly preserved because Parker did not object at the time the statements were admitted into evidence at trial. We agree.

*Standard of Review and Applicable Legal Principles*

We exercise unlimited review over a claim that a defendant's Confrontation Clause rights were violated. *State v. Belone*, 295 Kan. 499, 502-03, 285 P.3d 378 (2012). In *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004), the United States Supreme Court held the Confrontation Clause bars a declarant's prior testimonial statements from being admitted at trial unless the defendant had a prior opportunity to cross-examine the witness. If such statements are erroneously admitted, the error can only be deemed harmless if the State meets its burden to show beyond a reasonable doubt the error did not affect the outcome at trial in light of the entire record, i.e., there is no reasonable probability the error affected the jury's verdict. *State v. Bennington*, 293 Kan. 503, 524, 264 P.3d 440 (2011).

*Discussion*

The State is correct in arguing Parker failed to properly preserve this issue. Parker cites to the point in the record where he objected to Gunter's statements being used, but that was during a bench conference while Gunter was still on the stand during cross-examination. The State asked the district court to find Gunter was an unavailable witness and allow his recorded statements to be introduced through Boone. The district court explained, "So the statements that you have that were given although [defense counsel]

5

was not able to cross-examine any of those statements that were given to authorities, those will be admitted, but your objection is noted." But the district court gave no indication it was granting Parker a standing objection to the admission of Gunter's statements. When the State later moved to admit the recordings during Boone's testimony, Parker responded, "No objection, Your Honor."

At best, Parker made a preemptive objection and later abandoned it. But our Supreme Court has clearly explained: "[A] 'timely interposed . . . objection' is required by the plain language of K.S.A. 60-404." *State v. Ballou*, 310 Kan. 591, 613, 448 P.3d 479 (2019). This requires an objection be made "*between* the introduction of the evidence at trial and its admission." 310 Kan. at 614. Here, Parker failed to lodge an objection when the State introduced the recordings during Boone's testimony. As another panel of this court found in *State v. Hart*, 44 Kan. App. 2d 986, 1010, 242 P.3d 1230 (2010), an objection lodged during one witness' testimony is insufficient to preserve an objection to the testimony of another witness. We find the issue unpreserved and decline to consider it.

*Parker failed to preserve his constitutional challenge to K.S.A. 21-6304(a)(3)(A).*

Parker further argues criminal possession of a firearm under K.S.A. 21-6304(a)(3)(A) violates section 4 of the Kansas Constitution Bill of Rights. Accordingly, he asks us to reverse his conviction and vacate his sentence for that charge. The State responds this issue should not be considered on appeal because it was not raised before the district court. We agree with the State.

*Standard of Review*

The constitutionality of a statute is a question of law subject to unlimited review. *Board of Johnson County Comm'rs v. Jordan*, 303 Kan. 844, 858, 370 P.3d 1170 (2016).

6

*Discussion*

Parker admits he did not raise this issue before the district court. Issues not raised before the district court generally cannot be raised on appeal. *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022). Constitutional grounds for reversal asserted for the first time on appeal are not properly before the appellate court for review. *State v. Holley*, 315 Kan. 512, 524, 509 P.3d 542 (2022). Parker asserts the issue should still be considered because (1) it is a pure question of law arising on proven or admitted facts and is finally determinative of the case, (2) doing so would protect his fundamental rights, and (3) doing so would serve the ends of justice. See *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021) (noting exceptions to preservation rule).

Parker acknowledges our Supreme Court refused to reach the merits of this same issue in *State v. Kemmerly*, 319 Kan. 91, 552 P.3d 1244 (2024). He further acknowledges "[a]t least ten panels of [this court] have had an opportunity to consider the issue, but declined to reach the merits." As our Supreme Court noted in *Kemmerly*, this is not an issue turning solely on proven or admitted facts. A constitutional claim like this involves significant factual development. If the statute indeed infringes upon a fundamental right, the State would have to develop a record to show the statute is narrowly tailored to serve a compelling state interest. 319 Kan. at 103-04. But the State was not given the opportunity to do so here because the issue was not raised before the district court. We are duty-bound to follow Kansas Supreme Court precedent absent some indication our Supreme Court is departing from its position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). There is no indication our Supreme Court is departing from its position in *Kemmerly*; therefore, we will not consider the issue on the merits.

Affirmed.