NOT DESIGNATED FOR PUBLICATION

No. 126,335

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ROBERT JOHN ESCARCEGA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Kingman District Court; FRANCIS E. MEISENHEIMER, judge. Submitted without oral argument. Opinion filed June 5, 2026. Reversed and remanded with directions.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HILL, P.J., PICKERING and BOLTON FLEMING, JJ.

PER CURIAM: In this appeal, we are asked to decide whether preliminary hearing testimony obtained in violation of a defendant's right to self-representation may be admitted at trial.

Robert Escarcega was charged with attempted first-degree murder after an altercation with his significant other, Jane (pseudonym). During the preliminary hearing, Escarcega asserted his Sixth Amendment right to self-representation. A magistrate judge denied Escarcega's request to represent himself and after some discussion, removed

Escarcega from the courtroom. The preliminary hearing continued in Escarcega's absence. Escarcega's attorney cross-examined Jane in his absence.

Realizing the error that occurred in the first preliminary hearing, the district court ordered a second preliminary hearing. Jane did not appear at the second preliminary hearing, but the district court nonetheless found probable cause that Escarcega committed attempted first-degree murder. The case proceeded to a jury trial.

Jane did not appear at trial. After declaring Jane an unavailable witness, the district court admitted Jane's testimony from the first preliminary hearing testimony over Escarcega's objections. Escarcega believed that admitting Jane's testimony violated both his rights of self-representation and of confrontation under the Sixth Amendment.

At the conclusion of the trial, Escarcega was convicted of the lesser included charge of attempted second-degree murder. He raises multiple issues on appeal, but we find the resolution of one issue is determinative of the case.

After a thorough review of the record, we find that the district court erred in admitting Jane's preliminary hearing testimony at trial. While prior preliminary hearing testimony may be admitted into evidence at trial, its admissibility requires a prior, adequate cross-examination of the witness. And here, that adequate cross-examination did not occur because the cross-examination was conducted as part of the violation of Escarcega's right of self-representation at the first preliminary hearing. The use of Jane's preliminary hearing testimony at trial violated Escarcega's right to confrontation under the Sixth Amendment of the United States Constitution. The district court's error was not harmless because the State failed to show that there is no reasonable possibility that the violation of Escarcega's confrontation rights contributed to the verdict. Accordingly, we reverse and remand for a new trial.

FACTUAL AND PROCEDURAL BACKGROUND

Robert Escarcega and Jane were in a romantic relationship. Together, they left the state of California, where they had been residing with family, and started to travel the country. Their travels brought them to Kingman County, Kansas. On October 2, 2021, while Escarcega and Jane were pulled over on the side of the road, an altercation between them ensued, resulting in significant injury to Jane. Jane would later testify that Escarcega stabbed her multiple times. Escarcega would testify that Jane suffered from significant mental health issues and her injuries were the result of self-harm.

After the incident, Escarcega left the scene in one direction and Jane in the other. Jane sought help from a semi-truck driver, who assisted her in contacting law enforcement. The same driver transported Jane to the Kingman County hospital. After being stabilized, Jane was transferred to Wesley Medical Center where she received additional care.

On October 7, 2021, Escarcega was charged with attempted first-degree murder. At his first appearance, Escarcega applied for court-appointed counsel, and Elaine Esparza was appointed as his attorney.

A preliminary hearing was held on January 21, 2022, before a magistrate judge. As the hearing began, Escarcega informed the court that he was invoking his right to represent himself under the Sixth Amendment. He also requested a continuance, claiming that he had not been given the opportunity to review the discovery in his case because his attorney had only provided it to him one hour prior to the court hearing. Escarcega's attorney responded that she had met with Escarcega that morning at the jail to review the discovery and that she was prepared to represent him at the hearing. The magistrate judge denied Escarcega's request:

3

"Well, as I remember, the last time Mr. Escarcega appeared, he was complaining that the justice system wasn't moving fast enough and that his case was being delayed. So I don't think that we need to delay this any further. I believe that Ms. Esparza, sir, is going to give you adequate representation. If you want to bring this up—if you get past today—and it's the burden is on the State to show probable cause today. And if they don't, then the charges will be represented—I mean, will be dismissed. And I believe that you are being adequately represented. If the State meets its burden, and you're bound over for trial, you can bring this up again. But right now, I don't believe that you are able to represent yourself, and I want to see you get adequate representation."

Escarcega then objected to the proceeding:

"I object to the proceeding right now. I have a Sixth Amendment right to represent myself. I need that entered on the record, Your Honor, please. And this is a right—I've represented myself in the past. I'm adequate representation for myself. I just received discovery today. She said she received it very recently. I object to these. Object to this matter proceeding from this point on."

The magistrate judge overruled Escarcega's objection. Escarcega responded with an additional objection to Esparza continuing as his attorney, which the district court also overruled. At this point, the magistrate judge warned Escarcega, "And if you continue to disrupt these hearings, then I'm going to have you removed from the courtroom, and you can go to the jail and participate in this hearing." Escarcega responded, "That's fine. Sixth Amendment rights violation, your honor. I would like to be removed from the courtroom, if that's the case." The magistrate judge then noted he would have Escarcega removed from the courtroom and arrangements would be made for him to participate by Zoom from the jail. Escarcega replied, "No, sir, I don't. I don't want to take part in these proceedings. You're violating my rights, my civil rights. I will file a complaint, and we'll go from there." The magistrate judge ordered Escarcega removed from the courtroom and he did not participate in the preliminary hearing.

The preliminary hearing continued in Escarcega's absence. Jane testified in detail about the circumstances of the incident that resulted in her injuries. She described being stabbed by Escarcega multiple times and that she required medical treatment. A forensic nurse, Tami Wagstaff, and the Kingman County undersheriff, David Hillman, also testified. At the conclusion of the hearing, the magistrate judge found probable cause that Escarcega committed attempted first-degree murder and bound him over for trial.

A few days after the preliminary hearing, Escarcega's attorney filed a motion to allow Escarcega to represent himself based on the Sixth Amendment. The motion concluded that Escarcega should have been allowed to represent himself at his preliminary hearing because it was a critical stage of his criminal case. He alleged that failure to allow him to do so violated his right to self-representation. Escarcega renewed his request to represent himself.

On March 7, 2022, the court held a hearing to address Escarcega's request for self-representation. After an inquiry, the Court found that Escarcega's waiver of counsel was knowing and voluntary and allowed him to represent himself. Escarcega then stated that he would not waive his right to preliminary hearing or agree to a new preliminary hearing.

On March 11, 2022, the State filed a motion for a new preliminary hearing, acknowledging that "Defendants have a right to self-representation that attaches at preliminary hearing and the right may be granted after a knowing and intelligent waiver of the right to counsel." The State concluded that the first preliminary hearing occurred in violation of Escarcega's right to self-representation, and the proper remedy was to conduct a second preliminary hearing.

While that motion was pending, the district court, having taken over the case, appointed Michael Brown as Escarcega's standby counsel—to which Escarcega did not

5

object. At a motions hearing on May 10, 2022, the district court granted the State's motion for a second preliminary hearing. It conducted the second preliminary hearing on the same date. Notably, Jane was not present and did not testify. A victim witness trial assistant for the State would later testify that the State was unable to serve Jane with a subpoena for this hearing. At the conclusion of the hearing, the district court found that probable cause existed that Escarcega committed the crime of attempted first-degree murder and bound him over for trial. Escarcega waived formal arraignment and entered a plea of not guilty. Escarcega formally requested standby counsel in a motion filed May 13, 2022, and Robert Slinkard was appointed.

On June 3, 2022, a hearing was held to determine the scope of Slinkard's representation of Escarcega at his upcoming trial. Escarcega agreed that he did not want counsel for the attempted murder charge, but Escarcega was satisfied with Slinkard as standby counsel. At a motions hearing on November 8, 2022, Escarcega asked to waive his right to represent himself and asked for his standby counsel, Slinkard, to represent him at trial. His request was granted. The case was scheduled for a jury trial.

Prior to Slinkard's appointment as trial counsel, Escarcega had filed a pro se motion to suppress Jane's testimony from the first preliminary hearing. He argued that Jane's testimony occurred during the first preliminary hearing "in violation of his Sixth Amendment rights of effective counsel, self representation and confrontation clause." Escarcega explained that Jane was the only eyewitness, and he was denied an opportunity to cross-examine and impeach her when he did not participate in the first preliminary hearing after his right to self-representation was violated. Escarcega also argued that even if Jane was found to be an unavailable witness, "it will be inappropriate to admit her preliminary testimony because the cross examination by forced counsel was insufficient to satisfy the confrontation clause." He specifically noted that without his presence, his attorney would not be able to appropriately cross-examine Jane on the issue of bias.

6

The State filed a response. The State argued that Jane's testimony might be used at trial to refresh her recollection. At that point, the State anticipated Jane would be testifying at trial. But by November 8, 2022, the State had become aware that Jane was in California and would likely be unavailable for trial. As a result, the State filed a motion to admit Jane's statements from the first preliminary hearing, arguing Escarcega forfeited his confrontation rights due to his own wrongdoing. The State alleged that despite a no contact order, Escarcega had been calling, texting, and emailing Jane following her testimony at the first preliminary hearing. The State argued that Escarcega forfeited his right to confront Jane by procuring her absence at trial through wrongdoing.

Escarcega filed a response. He noted that there had been phone calls with Jane while he was incarcerated, but he did not threaten Jane in any way during those calls. He alleged that contrary to the State's motion, Jane contacted him through messages on Facebook. He also alleged that Jane was being pressured by law enforcement to testify. Escarcega stated that there was no evidence that Jane left the state for any other reason other than her own free will. The district court chose to defer both Escarcega's motion to suppress and the State's motion to admit Jane's preliminary hearing testimony until trial as there was still some question as to whether Jane would appear.

A jury trial was held on January 30, 2023. After voir dire but before the presentation of evidence, the State informed the court that Jane would not be present for trial. The district court scheduled an evidentiary hearing on the pending motions from the parties related to the admissibility of Jane's testimony for the next morning.

At the evidentiary hearing, the State sought to admit Jane's preliminary hearing testimony because she was unavailable as a trial witness, and the State believed Escarcega had procured her absence. The State believed Jane was in California. It offered testimony from the Kingman County Sheriff and the State's victim witness trial assistant. The State admitted evidence of four phone calls between Escarcega and Jane while he

7

was in jail. This evidence is more fully discussed in our analysis below. But generally, Escarcega made a number of statements during the phone calls that made Jane aware he did not want her to cooperate in the case. During other phone calls, the parties discussed marriage and their relationship. The States' witnesses confirmed that Jane suffered from anxiety and feared law enforcement. She lived in her car and did not have a permanent residence or employment where she could be contacted. Jane also feared travel. Escarcega's aunt and uncle testified that they had once paid for Jane to travel to Alaska to see her daughter, but once Jane arrived, she refused to board the flight. The State's victim witness trial assistant testified that Jane had no valid ID she could use for travel. The trial assistant testified that the State had sent Jane money on a preloaded financial card for travel expenses with the hope she would drive herself to Kansas. A week before trial, Jane called and said she had spent those funds. Finally, the State did not request a material witness warrant to secure Jane's attendance at the jury trial.

Escarcega offered no witnesses but argued that Jane's preliminary hearing testimony should be suppressed because it occurred in violation of his right of self-representation, and its use at trial would violate his right to confront his accuser.

At the conclusion of the evidentiary hearing, the court denied Escarcega's motion to suppress and granted the State's motion to admit Jane's testimony from the first preliminary hearing. It first noted that after reviewing the evidence, it did not believe Escarcega made any threat to Jane in his phone calls from the jail. The court found that while there was evidence that Escarcega did not want Jane cooperating with law enforcement, "the evidence doesn't support an intent to not appear on a specific occasion, whether that be preliminary hearing, all scheduled occasions --let me put it that way. Whether that be a second preliminary hearing, or whether that be this trial, or it wasn't scheduled at that point in time."

8

The court found that the State made "reasonable efforts" to have Jane appear for trial. It noted that the State subpoenaed Jane and provided funds for her transportation. The court went on to note that Jane was homeless and lived in her car. She had no employment. The court also noted Jane's issues with law enforcement. The district court concluded:

> "So I'm not making a finding. I don't believe the evidence shows that—that Mr. Escarcega's actions are the sole cause of her non-appearance. But, clearly—and I'm relying on *State v. Belone*, which is 295 Kan. 499[, 285 P.3d 378 (2012)]. That's a 2012 case, which reflects that the State must prove, by a preponderance of the evidence, that the Defendant's act of wrongdoing was specifically intended to prevent her and the testimony—the evidence reflects that. And, so, I'm going to grant the Defendant's—or the State's motion. That will apply, at this point, at least, to her statements—her testimony relating to the first preliminarily hearing—and, so, testimonial statements that she made to law enforcement as part of the investigation or followup after this case."

Pursuant to the district court's order, at trial, Jane's testimony from the first preliminary hearing was read to the jury.

The jury trial spanned over several days and included testimony from multiple witnesses. At the conclusion of the trial, Escarcega was found guilty of a lesser included charge of attempted murder in the second degree. He timely appeals.

ANALYSIS

DID A VIOLATION OF ESCARCEGA'S RIGHT OF SELF-REPRESENTATION RESULT IN STRUCTURAL ERROR?

*Preservation*

Escarcega argues that the district court erred by admitting Jane's testimony from the first preliminary hearing in violation of his Sixth Amendment right to self-

9

representation. The State's first argument in response is that Escarcega did not preserve his issue for appeal. "Issues not raised before the district court cannot be raised on appeal." *State v. Green*, 315 Kan. 178, 182, 505 P.3d 377 (2022).

The State's argument ignores the fact that Escarcega made this exact argument multiple times in district court. First, the magistrate judge denied Robert's motion for self-representation at his initial preliminary examination. This resulted in Escarcega filing a motion to allow Escarcega to represent himself. The motion included an argument that the court's failure to allow him to represent himself at his preliminary hearing violated his right to self-representation.

Escarcega also objected to the State's motion for a second preliminary hearing, arguing that the denial of his right to self-representation would also impact his right to confront and examine the witnesses against him. Escarcega specifically asked that the preliminary hearing be ruled inadmissible because it occurred as the result of a violation of his rights.

Then, following the second preliminary hearing, Escarcega filed a motion to suppress the testimony from the first preliminary hearing, arguing that because his right of self-representation was violated, he was not allowed to confront and cross-examine Jane. We find that Escarcega has preserved his argument for appeal.

*Standard of Review*

"The extent of the right to assistance of counsel and the related right to self-representation is a question of law over which this court exercises unlimited review." *State v. Bunyard*, 307 Kan. 463, 470, 410 P.3d 902 (2018).

*Escarcega's Sixth Amendment right to self-representation was violated at the first preliminary hearing.*

The right to self-representation is guaranteed by the Sixth Amendment to the United States Constitution. *Bunyard*, 307 Kan. at 470. A defendant has an unqualified right to self-representation before the start of trial. *State v. Cromwell*, 253 Kan. 495, 505, 856 P.2d 1299 (1993). That right to self-representation extends to preliminary examination because it is a "critical stage of the criminal process." *State v. Jones*, 290 Kan. 373, 379-80, 228 P.3d 394 (2010). The State concedes that Escarcega was denied his right to represent himself at the original preliminary hearing.

Generally, if an accused is found guilty, errors at preliminary hearings are considered harmless unless prejudice is shown. *Jones*, 290 Kan. at 381. But a structural error cannot be harmless because it affects "'the framework within which the trial proceeds.'" 290 Kan. at 382 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 309-10, 111 S. Ct. 1246, 113 L. Ed. 2d 302 [1991]). Thus, a "violation of a Sixth Amendment right to counsel is subject to structural error analysis." 290 Kan. at 382. This includes when the denial of that right occurs within a preliminary hearing. 290 Kan. at 382. "Since the right of self-representation is a right that when exercised usually increases the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable to 'harmless error' analysis. The right is either respected or denied; its deprivation cannot be harmless." *Bunyard*, 307 Kan. at 471. The magistrate's failure to properly respond to Escarcega's asserted right to represent himself at the preliminary hearing, left unaddressed, would have resulted in structural error.

*A second preliminary hearing allowed the case to proceed to trial.*

When structural error occurs at the preliminary hearing stage, the Kansas Supreme Court has recognized the error has "consequences that are necessarily unquantifiable and indeterminate." *Jones*, 290 Kan. at 382-83 (quoting *United States v. Gonzalez-Lopez*, 548

11

U.S. 140, 150, 126 S. Ct. 2557, 165 L. Ed. 2d 409 [2006]). For this reason, it has declined "to speculate what might have happened had the district court followed [the] constitutionally mandated procedures." *Jones*, 290 Kan. at 383.

In *Jones* and *Bunyard*, the remedy to the violation was to reverse the conviction and remand to the district court for a new preliminary hearing. Unlike in those cases, the parties here recognized the error before the trial. The State filed a motion for a new preliminary hearing on March 11, 2022. The district court ordered a second preliminary hearing with Escarcega as his own counsel. The State argues this cured any defect. Escarcega objected to the procedure.

Resolving this issue becomes complicated because the violation of Escarcega's right to self-representation is inextricably linked to his rights under the Confrontation Clause. And as we conclude below, the violation of Escarcega's confrontation rights is the central issue in this appeal. But with regard to the structural error that occurred due to the denial of Escarcega's self-representation rights, a second preliminary hearing occurred where Escarcega represented himself. We find under *Jones* and *Bunyard* that the structural error was itself no longer an obstacle to the case proceeding to trial after the court conducted a second preliminary hearing, though a new problem developed when the district court admitted Jane's testimony from the first preliminary hearing at trial.

## DID THE DISTRICT COURT ERR IN ADMITTING JANE'S PRELIMINARY HEARING TESTIMONY?

*Standard of Review*

Confrontation Clause issues under the Sixth Amendment to the United States Constitution are reviewed de novo. *State v. Belone*, 295 Kan. 499, 502-03, 285 P.3d 378 (2012). Factual findings pertaining to the unavailability of witnesses are reviewed for abuse of discretion. *State v. Young*, 277 Kan. 588, 597, 87 P.3d 308 (2004). A judicial

12

action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

*Discussion*

Escarcega argues that the admission of Jane's preliminary hearing testimony at trial violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. The Confrontation Clause provides that, "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' We have held that this bedrock procedural guarantee applies to both federal and state prosecutions." *Crawford v. Washington*, 541 U.S. 36, 42, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The Kansas Constitution Bill of Rights section 10 provides a criminal defendant with the right "'to meet the witness face-to-face.'" *Young*, 277 Kan. at 598.

"The right of confrontation encompasses both the right to cross-examine and the right to observe an accuser face to face. However, the primary purpose of the confrontation clause is to give the accused the opportunity for cross-examination." *State v. Johnson*, 240 Kan. 326, 329, 729 P. 2d 1169 (1986). The "ultimate goal" of the Confrontation Clause is "to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner:  by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. *Crawford* also held that the Confrontation Clause allows admission of hearsay testimonial evidence in criminal prosecutions if "(1) the witness is unavailable and (2) the accused had a prior opportunity to cross-examine the witness." *State v. Showalter*, 318 Kan. 338, 357, 543 P.3d 508 (2024).

13

*Cross-examination during the first preliminary hearing was inadequate because it occurred in violation of Escarcega's Sixth Amendment right to self-representation.*

"The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him." *Giles v. California*, 554 U.S. 353, 357-58, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008) (citing *Crawford v. Washington*, 541 U.S. at 68).

The Confrontation Clause prohibits the admission of testimonial statements from an unavailable witness, unless the defendant had a prior opportunity to cross-examine the declarant. *State v. Noah*, 284 Kan. 608, 611, 162 P.3d 799 (2007). "The first requirement for admitting hearsay under *Crawford* is whether the declarant was unavailable." *Noah*, 284 Kan. at 612. Here, neither party disputes that Jane was unavailable.

Next, we consider whether Escarcega "had a prior opportunity to cross-examine" Jane. 284 Kan. at 612. Escarcega argues that the denial of his right to self-representation at his first preliminary hearing also denied Escarcega the right and opportunity to confront and cross-examine Jane before her testimony was used at trial. The Kansas Supreme Court has remarked, "A defendant has the right to be present in person at a preliminary hearing, to introduce evidence on the defendant's own behalf, and to cross-examine witnesses against the defendant." *State v. Jones*, 290 Kan. 373, 379, 228 P.3d 394 (2010). As a panel of our court explained, "While Kansas caselaw requires an opportunity for cross-examination before the court admits hearsay statements, the caselaw does not specify 'how much cross-examination is required to afford the defendant an adequate opportunity.' *State v. Noah*, 284 Kan. [at 612-13]. The court considers each case on its own particular facts." *State v. Wilson*, No. 122,824, 2021 WL

14

4352533, at *4 (Kan. App. 2021) (unpublished opinion). But in all cases, the Confrontation Clause requires an opportunity for adequate cross-examination. *Crawford*, 541 U.S. at 57 (citing *Mattox v. United States*, 156 U.S. 237, 15 S. Ct. 337, 39 L. Ed. 2d 409 [1895]) ("Our later cases conform to *Mattox's* holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine.").

Here, the State argues that Escarcega had a prior opportunity to cross-examine Jane during the first preliminary hearing through his attorney. But Jane's preliminary hearing testimony could only be admitted at trial if the prior cross-examination was "adequate." *Crawford*, 541 U.S. at 57. And the State's argument ignores the fact that the first preliminary hearing occurred in violation of Escarcega's right of self-representation—a fact the State concedes. A cross-examination that occurs in violation of a defendant's right of self-representation cannot be considered "adequate" for purposes of compliance under the Confrontation Clause. Jane's testimony from the first preliminary hearing, which was obtained after Escarcega had been removed from the courtroom as part of the court's violation of his constitutional rights, cannot be used at trial without violating Escarcega's confrontation rights. Escarcega cannot be required to forfeit his right to self-representation in order to confront his accuser.

*Escarcega did not forfeit his right to confrontation by wrongdoing.*

An exception to the right to confrontation is the doctrine of forfeiture by wrongdoing. "That doctrine provides that a defendant who obtains the absence of a witness by his or her own wrongdoing forfeits his or her constitutional right to confrontation." *Belone*, 295 Kan. at 503. In *Belone*, the court cited the United States Supreme Court, holding "the forfeiture by wrongdoing exception only applies where the State has proved by a preponderance of the evidence that the defendant's act of wrongdoing was specifically intended to prevent the witness' testimony." *Belone*, 295

15

Kan. at 503 (citing *Giles*, 554 U.S. at 368); see also *State v. Jones*, 287 Kan. 559, 567-68, 197 P.3d 815 (2008).

Forfeiture by wrongdoing is a two-part test. It requires the State to prove, "by a preponderance of the evidence, that the defendant procured that declarant's absence with the intent to prevent the declarant from testifying against the defendant." *State v. Robinson*, 293 Kan. 1002, 1024, 270 P.3d 1183 (2012).

On November 8, 2022, the State filed a motion to admit Jane's statements from the first preliminary hearing, alleging Escarcega had forfeited his confrontation rights by his wrongdoing. A hearing was held in conjunction with Escarcega's motion to suppress Jane's preliminary hearing testimony. At the conclusion of the hearing, the district court found that while Escarcega's actions were not the "sole cause" of Jane's failure to appear at trial, the State had nonetheless met its burden of proof. It stated, "But, clearly—and I'm relying on *State v. Belone*, which is 295 Kan. 499. That's a 2012 case, which reflects that the State must prove, by a preponderance of the evidence, that the Defendant's act of wrongdoing was specifically intended to prevent her and the testimony—the evidence reflects that."

In *Belone*, the Kansas Supreme Court reviewed Belone's convictions for second-degree murder, kidnapping, and other crimes related to the beating death of his significant other. On appeal, Belone argued that the trial court violated his right of confrontation by admitting testimonial statements of the victim into evidence. 295 Kan. at 499.

The court reversed and remanded for a new trial based on the violation of Belone's rights under the Confrontation Clause. It held that the forfeiture by wrongdoing exception to the Confrontation Clause did not apply because the State did not meet its burden of proof to show that the defendant killed the witness for the specific purpose of preventing

16

her from testifying at trial. The court noted that to trigger the doctrine, a defendant must have "specifically intended to prevent the witness' testimony." 295 Kan. at 503. In other words, the State had only met one part of the test by showing Belone procured the victim's absence. It did not prove Belone's intent. 295 Kan. at 504.

Similarly, in *Jones*, 287 Kan. 559, the defendant appealed his conviction for first degree murder. One issue on appeal was the admissibility of the victim's testimonial statements under the forfeiture by wrongdoing doctrine. The court considered whether "Jones' actions in pursuing the victim around the vehicle and into the street, while discharging numerous rounds from his handgun, manifested an intent to make certain that the victim would not be alive to testify." 287 Kan. at 568. It reasoned, however, that "given the presence of a number of other witnesses at the shooting scene, the killing would not have assured that the killer's identity would go undetected." 287 Kan. at 568. The court concluded, "we are unwilling to declare as a matter of law that a preponderance of the evidence which was presented below showed that Jones killed the victim with the intent to prevent his subsequent testimony at the ensuing murder trial." *Jones*, 287 Kan. at 568. Again, in *Jones*, the State failed to meet both parts of the two-part test by failing to prove Jones' intent.

Both the *Belone* and *Jones* courts acknowledged that the United States Supreme Court had recently considered the forfeiture by wrongdoing doctrine within *Giles v. California*, 554 U.S. 353. The *Jones* court noted that "*Giles* clarified that it is insufficient to merely show that the defendant wrongfully caused the absence of a witness in order to admit the witness' unconfronted testimony under the forfeiture rule. The State must show that the defendant intended to prevent the witness from testifying." *Jones,* 287 Kan. at 567-68. *Giles* also confirms the requirement of the two-part test.

To invoke the doctrine of forfeiture by wrongdoing, not only must a defendant possess an intent to prevent the witness from testifying, but the State must prove by a

17

preponderance of evidence "*that the defendant procured that declarant's absence* with the intent to prevent the declarant from testifying against the defendant. See *Giles*, 554 U.S. at 361-69; *State v. Jones*, 287 Kan. [at 567-69] (Emphasis added)." *Robinson*, 293 Kan. at 1024.

We turn to the evidence offered at the evidentiary hearing concerning the admission of Jane's testimony that occurred on the second morning of trial to examine whether the district court correctly concluded that the State proved by a preponderance of the evidence that Escarcega wrongfully procured Jane's absence with the intent to prevent her from testifying. See *Robinson*, 293 Kan. at 1024.

The State called Kingman County Sheriff Brent Wood as a witness. Sheriff Wood testified that he became involved in the case when he investigated the incident between Escarcega and Jane that formed the basis of the charge. He had remained in contact with Jane and testified that after the incident, Jane remained fearful of Escarcega. He testified that the last time he had contact with Jane was in December of 2022, prior to the trial. At that time, Jane indicated to Sheriff Wood that she did not have money to travel to Kansas for the trial. Sheriff Wood stated his contact with Jane was not regular and she would reach out to him. He testified that Jane does not have a permanent address and does not stay in one place very long. He stated that her vehicle is her home, and that Jane is anxious about leaving her vehicle.

Sheriff Wood testified that he was aware of 1,896 phone calls made between Escarcega and Jane while Escarcega was an inmate at the jail. He reviewed some of these calls, and there were four calls that stood out to him with regard to comments made by Escarcega that could have impacted Jane's attendance at trial.

Sheriff Wood identified the first call as being made on February 3, 2022. Sheriff Wood described that call as Escarcega asking Jane, "Is this case going to get pursued or

18

what?" Escarcega answered his own question by saying, "It doesn't go anywhere without you." Jane then tells Escarcega, "You know, that's not true. They're—they're doing what they're going to do," to which Escarcega again replies, "It doesn't go anywhere without you."

The second call occurred on February 11, 2022. Sheriff Wood described that during that call, Escarcega told Jane, "We can get through this. As long as we don't communicate with those fuckers, we'll be all right." Jane replied, "I'm going to be there on the next court date." Escarcega stated, "You can't. That's a horrible idea, man. I'm telling you, that's the worst thing you can do–is to be in any kind of contact with them or the Court." Jane replied, "Why? Because I want to see you." Escarcega told her, "After what they told you, I wouldn't be here right now. I'd be out already." And Escarcega stated he would have been out on the 21st. Sheriff Wood noted the significance of "the 21st" was that it was the date of the first preliminary hearing, January 21, 2022.

The third call occurred later in the day on February 11, 2022. Sheriff Wood described that in the third call, Escarcega said to Jane, "Nobody needs your help. No, man, I don't need you here." Jane asked, "Why is that?" Escarcega responded, "I got a fucking court case right now." Jane again said she didn't understand, and Escarcega responded, "I don't need you nowhere near my court case, nowhere near me or nowhere around here." Wood described that the two of them became upset. Escarcega commented, "It's not rocket science. You should already know this shit. I'd be out right now if you hadn't come on the 21st." Jane said again that she didn't understand, and Escarcega stated, "Had you not come on the 21st, I'd be out right now. I don't know how else I can put it." Jane responded, "I don't know." Escarcega concluded, "If I tell you I don't want you around here and around this case, I don't know how else to put it. I can't talk on the fucking phone. We've been over this."

19

The fourth call occurred on February 21, 2022. Sheriff Wood described that during that call, Jane told Escarcega, "I have to go away, Rob." Escarcega replied, "No, you don't." Escarcega continued, "I can't have you around this case right here. That's it." Jane asked about going somewhere for Escarcega's safety and Escarcega replied, "No. My safety only depends on you communicating with the fucking men. That's it, man. That's it."

Sheriff Wood also noted that there were some calls where Jane tried to talk about the case with Escarcega, and Escarcega would reply that he could not discuss the case with her over the phone. Sheriff Wood testified he did not observe any threats made by Escarcega to Jane. And Sheriff Wood testified that there were multiple calls between Escarcega and Jane discussing "boyfriend-girlfriend-type talk" and marriage.

Stacey Murphy, victim witness trial assistant for the State, also testified with regard to Jane's absence at trial. Murphy testified that she was aware Jane did not have a permanent residence and lived in her vehicle. Murphy stated that Jane has a fear of law enforcement. Jane indicated to Murphy that while she was scared something might happen to her, she intended to come to trial. But Murphy stated that Jane did not want to leave her vehicle as it was her home and also had no identification she could use to travel by air or bus. Jane also had a dog she did not want to leave. If Jane came to the trial, she would need to drive her car. Murphy made travel plans to assist Jane in coming to trial. She made a hotel arrangement where Jane could keep her dog. Murphy also arranged for Jane to receive travel funds, but Jane spent the money before travelling.

Murphy was also aware that Jane was personally served with a subpoena but did not attend trial. Jane testified at the first preliminary hearing, but the State did not serve Jane with a subpoena for the second preliminary hearing.

20

After a thorough review of the record, we find that the district court erred by failing to correctly apply the two-part test stated in *Robinson*: "that the defendant procured that declarant's absence with the intent to prevent the declarant from testifying against the defendant." *Robinson*, 293 Kan. at 1024.

At the conclusion of the evidentiary hearing, the district court issued a detailed decision from the bench.

> "I'm relying on *State v. Belone*, which is 295 Kan. 499. That's a 2012 case, which reflects that the State must prove, by a preponderance of the evidence, that the Defendant's act of wrongdoing was specifically intended to prevent her and the testimony—the evidence reflects that. And, so, I'm going to grant the Defendant's—or the State's motion. That will apply, at this point, at least, to her statements—her testimony relating to the first preliminarily hearing—and, so, testimonial statements that she made to law enforcement as part of the investigation or followup after this case."

To apply the doctrine of forfeiture by wrongdoing and admit Jane's preliminary hearing testimony, the district court needed to find that Escarcega wrongfully caused Jane's absence at the trial, and that Escarcega's actions were done with the specific intent to keep Jane from testifying at the trial. *Robinson*, 293 Kan. at 1024.

As to whether Escarcega wrongfully caused Jane's absence, the district court found that Escarcega was not the "sole" case of Jane's absence at trial. The district court noted that after listening to the four phone calls entered into evidence by the State, it did not find that Escarcega threatened Jane or promised Jane anything in an attempt to get her to not attend trial. It did find that Escarcega did not generally want Jane to cooperate with law enforcement.

> "And, clearly, those statements do not constitute—and I heard no statements that were of a direct threat, along the lines of 'I'm going to kill you. Somebody else is going to kill you. I'm going to hurt you. Somebody else is going to hurt you.' I didn't hear—I don't find

21

that there's any sort of conversation along those lines. I never heard any sort of conversation about that—was so blatant that indicates, you know, 'I will provide you some benefit if you don't—if you don't appear. Or somebody else will provide you some benefit, if you don't appear.'

"But the intent of those statements, as I indicated yesterday in the ruling on the 455 issue, is clear by Defendant he does not want [Jane] cooperating with law enforcement. He did not want [Jane] to appear, and he made that very clear."

The district court also noted that Jane's personal situation likely played a role in her absence at trial.

"She's primarily homeless. She lives in her car. Stays with other folks. Has no regular income. She—or regular employment—maybe is a better way to put that. Based on the testimony that I've heard throughout the pretrial hearings in this case, she has some paranoia, I think, in terms of both law enforcement and the proceedings in general."

In considering whether Escarcega procured Jane's absence at trial, "Causation between the action of the defendant and the witness' absence appears key." *State v. Henderson*, 35 Kan. App. 2d 241, 253, 129 P.3d 646, 655 (2006), *aff'd,* 284 Kan. 267, 160 P.3d 776 (2007). In *Henderson,* a panel of our court found a Massachusetts case helpful to their causation analysis:

"As noted by the Supreme Judicial Court of Massachusetts:
'[T]he causal link necessary between a defendant's actions and a witness's unavailability may be established where (1) a defendant puts forward to a witness the idea to avoid testifying, either by threats, coercion, persuasion, or pressure; (2) a defendant physically prevents a witness from testifying; or (3) a defendant actively facilitates the carrying out of the witness's independent intent not to testify." *Commonwealth v. Edwards*, 444 Mass. 526, 541, 830 N.E.2d 158 (2005).'" *Henderson*, 35 Kan. App. 2d at 253.

In its ruling, the district court specifically found that Escarcega had not made any threat or promise related to Jane appearing at trial. And there is no evidence that Escarcega physically prevented Jane's appearance or facilitated Jane's intent not to testify. The district court's finding that Escarcega was not the "sole" reason for Jane's absence is supported by the record. The court found that Jane's personal situation played a role in her absence. The court's factual findings support our conclusion that for the purpose of the forfeiture doctrine, there was insufficient causation between Escarcega's actions and Jane's non-appearance to trigger a waiver of his constitutional right to confront his accuser.

The district court's legal conclusion under the second prong of the test is also problematic. Under the second prong, Escarcega's actions must have been done with the specific intent to keep Jane from testifying at the trial. *Robinson*, 293 Kan. at 1024. But the district court did not make such a finding. It held:

> "Now, I think the other factor that weighs—at least I want to make clear that I'd considered—is the timing of these phone calls. They were all in February—between February 3rd and February 21st—of last year. They were before the second preliminary hearing. And I want to talk about that procedurally a little bit, that they were before the second preliminary hearing. They were certainly well in advance—almost a year—eleven months prior to this trial. No subpoenas had been issued prior to the preliminary hearing at that point. Because I don't think that the decision had been made, at least initially, as to how that preliminary hearing was going to be handled. So the evidence doesn't support an intent to not appear on a specific occasion, whether that be preliminary hearing, all scheduled occasions—let me put it that way. Whether that be a second preliminary hearing, or whether that be this trial, or it wasn't scheduled at that point in time. But what it does clearly indicate is an intent to direct her not to cooperate with law enforcement."

As the district court pointed out, the "wrongful acts" of Escarcega, the phone calls, occurred nearly a year before the trial. The trial was not scheduled at the time the comments were made. There was no evidence in the record of any action by Escarcega

23

close in time to the trial. And Sheriff Wood and Murphy, the State's victim witness trial assistant, had contact with Jane in the month leading up to the trial and confirmed she planned to participate prior to spending her travel funds. A general finding by the district court that Escarcega was influencing Jane not to cooperate with law enforcement nearly a year before the trial is different than actions taken with the specific intent to keep Jane from testifying *at the trial*. See *Robinson*, 293 Kan. at 1024.

The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. And a criminal defendant in Kansas has the right to "meet the witness face to face." Kan. Const. Bill of Rights, § 10. Escarcega's rights were violated when Jane's testimony from the first preliminary hearing was admitted without giving Escarcega the opportunity to conduct an adequate cross-examination. This error occurred because the magistrate judge denied Escarcega his right of self-representation within the first preliminary hearing. Under the facts of this case, the doctrine of forfeiture by wrongdoing does not operate to deny Escarcega these rights.

For these reasons, we find that the district court erred in concluding that Jane's testimony from the first preliminary hearing was admissible on the basis of forfeiture by wrongdoing. The admission of the testimony occurred in violation of Escarcega's confrontation rights under the Sixth Amendment.

*The court's error was not harmless.*

The court in *Belone*, having found a Confrontation Clause violation, applied the following standard in determining whether the error was harmless:

> "'If the fundamental failure infringes upon a right guaranteed by the United States Constitution, the trial court should apply the constitutional harmless error standard defined in *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *reh.*

24

*denied* 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241 (1967),] in which case the error may be declared harmless where the party benefitting from the error proves beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e*.,* where there is no reasonable possibility that the error contributed to the verdict. An appellate court will use the same analysis. . . .' [*State v. ]Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 [2011)]." *Belone*, 295 Kan. at 504.

The United States Supreme Court has provided guidance on the reversibility factors we should consider in the context of a Confrontation Clause violation:

"The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

First, considering "the importance of the witness' testimony in the prosecution's case," 475 U.S at 684, we find that the only two eyewitnesses to the incident were Jane and Escarcega. Jane's testimony at the first preliminary hearing described a situation where Escarcega violently attacked her. But Escarcega's version of events was that Jane had a long history of mental illness, had committed self-harm, and had been asked to leave his relatives' home after a violent attack against him. Jane's testimony was critical to the prosecution's case.

Considering the second and third factors, Jane's testimony was not cumulative and while there was corroborating evidence from other witnesses, the source of information for those witnesses was Jane. Witnesses testified as to what Jane told them happened

25

during the incident, but no witness claimed to have witnessed the incident between the parties. And we note that the *Belone* court rejected the argument that independent witnesses could satisfy the State's burden to prove a Confrontation Clause violation harmless when none of the independent witnesses had "first-hand knowledge of the entire incident." *Belone*, 295 Kan. at 505 ("Playing an audio recording of [the victim] relating her version of the entire event is certainly more compelling evidence than presenting pieces of the puzzle from a number of different witnesses.").

Fourth, we note that the extent of cross-examination was limited by the violation of Escarcega's right of self-representation. Instead of being allowed to cross-examine Jane himself, as was Escarcega's right, Escarcega was removed from the courtroom after asserting his right of self-representation. The magistrate judge then continued the hearing without his participation.

Finally, the strength of the State's case largely depended on Jane's testimony. While there were other witnesses who testified as to Jane's injuries and her statements, only Jane could describe what actually happened to her. There was also physical evidence of Jane's injuries submitted at trial, but Jane provided the explanation for those injuries.

Here, the State has failed to carry its burden to show there is no reasonable possibility that the violation of Escarcega's confrontation rights contributed to the verdict. Thus, we cannot declare the error to be harmless. We must reverse and remand for a new trial. As a result, we need not address Escarcega's additional issues on appeal.

Reversed and remanded for new trial.

26